**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

---

ALISON J. NOHARA, individually,
and as representative of a Class of
Participants and Beneficiaries, on Behalf
of the Prevea Clinic, Inc. 401(k) and
Retirement Plan,

          Plaintiff,

   v.

PREVEA CLINIC, INC., THE BOARD
OF DIRECTORS OF PREVEA CLINC,
INC., and JOHN DOES 1-30,

          Defendants.

Case No. 2:20-cv-1079

Hon. William Griesbach

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S CLASS ACTION COMPLAINT**

---

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT ........................................................................................................................... 5

I.     PLAINTIFF'S FOURTEEN DAYS IN THE PLAN DOES NOT GIVE HER STANDING TO BRING THIS LAWSUIT .......................................................... 5

II.    PLAINTIFF'S CLAIMS ARE FORECLOSED BY BINDING SEVENTH CIRCUIT PRECEDENT ................................................................................... 8

    A.    Plaintiff's Fiduciary Breach Claim Should be Dismissed (Count I) .................... 9

        1.    *Plaintiff's Recordkeeping Fee Allegations Are Insufficient* ...................... 9

            a.    Plaintiff's allegations regarding Defendants' failure to monitor the Plan's recordkeeping fees lack substance ............... 10

            b.    Plaintiff's allegations regarding the structure of the recordkeeping arrangement directly conflict with Seventh Circuit law .................................................................................... 11

            c.    Plaintiff's guesswork regarding the Plan's recordkeeping fees lacks any plausibility ........................................................... 12

        2.    *Plaintiff's Allegations Regarding the Plan's Investment Options Are Similarly Baseless* ........................................................... 15

            a.    Plaintiff's allegations that the investment options were "too expensive" collide head-on with this Circuit's precedent ........... 16

            b.    Plaintiff's allegations that the Plan wrongly included actively-managed investments have routinely been rejected **Error! Bookmark not defined.**

            c.    Plaintiff's allegations related to the Plan's stable value fund are both disconnected and confused ........................................... 20

            d.    Plaintiff's share class allegations disregard a critical component of varying share classes ........................................... 21

    B.    Plaintiff's "Duty of Loyalty" Claim Lacks Any Requisite Facts (Count I) ......... 23

    C.    Plaintiff's Conclusory, Derivative Duty to Monitor Claim Should be Dismissed (Count II) ........................................................................ 24

    D.    The Complaint's Conclusory, Circular Prohibited Transaction Claim Should be Dismissed (Count III) ................................................. 25

CONCLUSION ..................................................................................................................... 26

Case 2:20-cv-01079-WCG   Filed 10/02/20   Page 2 of 34   Document 20

# TABLE OF AUTHORITIES

**Cases**

*Albert v. Oshkosh Corp.*,
  20-cv-901-WCG (E.D. Wis., filed June 16, 2020) ...................................................................1

*Amgen Inc. v. Harris*,
  136 S. Ct. 758 (2016) ..............................................................................................................9

*Amron v. Morgan Stanley Inv. Advisors, Inc.*,
  464 F.3d 338 (2d Cir. 2006) ..................................................................................................18

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) .................................................................................................................2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................8, 10, 24

*Bangalore v. Froedtert Health, Inc.*
  (E.D. Wis., filed June 12, 2020) .............................................................................................1

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................8, 20, 24

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ..................................................................................................9

*Brandt v. Bd. of Educ. of City of Chicago*,
  480 F.3d 460 (7th Cir. 2007) ...............................................................................................6, 7

*Brock v. Robbins*,
  830 F.2d 640 (7th Cir. 1987) ................................................................................................10

*Chesemore v. All. Holdings, Inc.*,
  886 F. Supp. 2d 1007 (W.D. Wis. 2012) ..............................................................................12

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ...................................................................................................................7

*Cotter v. Matthews Int'l Corp.*,
  No. 1:20-cv-1054-WCG (E.D. Wis., filed July 13, 2020) ......................................................1

*Cunningham v. Cornell Univ.*,
  2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019) ......................................................................14

738108682.10 1-Oct-20 14:31

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ........................................................................5

*Daugherty v. Univ. of Chicago*,
   2017 WL 4227942 (N.D. Ill. Sept. 22, 2017) ........................................23

*Davis v. FEC*,
   554 U.S. 724 (2008) ........................................................................5

*Davis v. Washington Univ.*,
   960 F.3d 478 (8th Cir. 2020) ...........................................................19

*Del Castillo v. Cmty. Child Care Council of Santa Clara County, Inc.*,
   2019 WL 6841222 (N.D. Cal. Dec. 16, 2019) ......................................11

*Divane v. Northwestern Univ.*,
   2018 WL 2388118 (N.D. Ill. May 25, 2018) ..........................16, 18, 21, 22

*Divane v. Northwestern Univ.*,
   953 F.3d 980 (7th Cir. 2020) ...................................................... *passim*

*Divane v. Northwestern Univ.*,
   No. 1:16-cv-08157 (N.D. Ill. May 7, 2018), ECF No. 154 .......................8

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) ........................................................................8

*Freedom From Religion Found., Inc. v. City of Green Bay*,
   581 F. Supp. 2d 1019 (E.D. Wis. 2008) (Griesbach, J.) ..........................6

*Freedom from Religion Found., Inc. v. Zielke*,
   845 F.2d 1463 (7th Cir. 1988) ...........................................................5

*Glick v. Thedacare, Inc.*,
   1:20-cv-1236-WCG (E.D. Wis., filed Aug. 12, 2020) .............................1

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ...................................................... *passim*

*Hecker v. Deere & Co.*,
   569 F.3d 708 (7th Cir. 2009) ...........................................................13

*Howell v. Motorola, Inc.*,
   633 F.3d 552 (7th Cir. 2011) ...........................................................23

738108682.10 1-Oct-20 14:31

*Lange v. Infinity Healthcare Physicians, S.C.*,
No. 3:20-cv-737 (W.D. Wis., filed Aug. 7, 2020) ....................................................1

*Leimkuehler v. American United Life Ins. Co.*,
713 F.3d 905 (7th Cir. 2013) ................................................................................21

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996)..............................................................................................25

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2011) .......................................................................*passim*

*Marks v. Trader Joe's Co.*,
2020 WL 2504333 (C.D. Cal. Apr. 24, 2020) .......................................3, 11, 12, 22

*Marshall v. Northrop Grumman Corp.*,
2019 WL 4058583 (C.D. Cal. Aug. 14, 2019).......................................................25

*Martin v. CareerBuilder*,
2020 WL 3578022 (N.D. Ill. July 1, 2020)....................................................*passim*

*Marvin v. Mercy Health Corp.*,
No. 3:20-cv-50293 (N.D. Ill., filed Aug. 6, 2020)..................................................1

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ......................................................................13, 17, 18

*Meyers v. Nicolet Rest. of De Pere*,
LLC, 843 F.3d 724 (7th Cir. 2016).........................................................................5

*Neil v. Zell*,
677 F. Supp. 2d 1010 (N.D. Ill. 2009), (Mar. 11, 2010).......................................24

*O'Driscoll v. Plexus Corp.*,
No. 1:20-cv-1065-WCG (E.D. Wis., filed July 14, 2020).......................................1

*O'Shea v. Littleton*,
414 U.S. 488 (1974)................................................................................................5

*Patterson v. Capital Grp. Companies, Inc.*,
2018 WL 748104 (C.D. Cal. Jan. 23, 2018) ........................................................21

*Patterson v. Morgan Stanley*,
2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ...........................................................3

*Payne v. TR Assocs., LLC,*
   880 F. Supp. 2d 702 (E.D.N.C. 2012) ..................................................................7

*Payton v. Cty. of Kane,*
   308 F.3d 673 (7th Cir. 2002) ...............................................................................5

*Ramos v. Banner Health,*
   2020 WL 2553705 (D. Colo. May 20, 2020) ......................................................25

*Sacerdote v. New York Univ.,*
   2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017) ................................................23, 25

*Sellers v. Anthem Life Ins. Co.,*
   316 F. Supp. 3d 25 (D.D.C. 2018) .....................................................................25

*Soulek v. Costco Corp.,*
   No. 1:20-cv-937-WCG (E.D. Wis., filed June 23, 2020) ......................................1

*Spano v. Boeing,*
   Case 06-743, Doc. 466 ......................................................................................14

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016) ........................................................................................5

*PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv.
Mgmt. Inc.,*
   712 F.3d 705 (2d Cir. 2013) .................................................................................9

*Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.,*
   633 F. Supp. 2d 610 (N.D. Ill. 2009) ...................................................................7

*Sweda v. Univ. of Penn.,*
   923 F.3d 320 (3d Cir. 2019) ...............................................................................25

*Thole v. U. S. Bank N.A.,*
   140 S. Ct. 1615 (2020) ........................................................................................5

*Tierney v. Vahle,*
   304 F.3d 734 (7th Cir. 2002) ...............................................................................3

*Treadway Companies, Inc. v. Care Corp.,*
   638 F.2d 357 (2d Cir. 1980) ................................................................................7

*Tussey v. ABB, Inc.,*
   746 F.3d 327 (8th Cir. 2014) .............................................................................12

*United Transp. Union v. Gateway W. Ry. Co.*,
  78 F.3d 1208 (7th Cir. 1996). ....................................................................6

*White v. Chevron Corp.*,
  2016 WL 4502808 ................................................................11, 12, 15, 22

*Woznicki v. Aurora Health Care, Inc.*,
  No. 2:20-cv-1246-PP (E.D. Wis., filed Aug. 14, 2020)............................1

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
  325 F. App'x 31 (2d Cir. 2009) ...............................................................13

**Statutes and Regulations**

29 U.S.C. § 1002(34) ....................................................................................2

29 U.S.C. § 1102(2)(A)..................................................................................2

ERISA § 406(a), 29 U.S.C. $ 1106(a) .........................................................24

ERISA § 406(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C) ......................................4

**Other Authorities**

Collective Investment Trusts (https://www.troweprice.com/financial-
  intermediary/us/en/investments/collective-investment-trusts.html) .......21

Dan M. McGill et al., *Fundamentals of Private Pensions* (8th ed. 2005) ....19

Fed. R. Civ. P. 12(b)(6)...............................................................................3, 8

https://prospectusexpress.broadridge.com/summary.asp?doctype=pros&clientid=t
  rowepll&fun did=74149P309 .................................................................21

Restatement (Third) of Trusts § 90 cmt. h(2) ..............................................19

738108682.10 1-Oct-20 14:31

Case 2:20-cv-01079-WCG   Filed 10/02/20   Page 7 of 34   Document 20

## INTRODUCTION

Some lawsuits actually stem from a genuine dispute between adverse parties. This is not such a lawsuit.

Plaintiff Alison J. Nohara ("Plaintiff") is an employee of Prevea Clinic, Inc. ("Prevea"). Just a few months ago, on July 2, 2020, Ms. Nohara became a participant in the Prevea Clinic, Inc., 401(k) and Retirement Plan ("Plan") by making her first contribution to the Plan—a contribution to only *one* of the Plan's investment options. Fourteen days later, on July 16, 2020, Ms. Nohara filed a 144-paragraph class-action lawsuit, claiming that the Plan's fiduciaries had mismanaged *twenty* of the Plan's investment options, over a six-year period.

Perhaps Ms. Nohara became disillusioned with the Plan during her fourteen days of participation. Or perhaps Ms. Nohara joined the Plan for the express purpose of enabling her counsel to file this lawsuit (a theory that finds some support in the nine virtually identical lawsuits filed against healthcare and other organizations by her counsel since June).[1]

Whatever the origin of this lawsuit, Ms. Nohara lacks standing to bring it. To pursue a fiduciary breach lawsuit, Ms. Nohara would need to credibly allege 1) past harm to obtain retrospective relief and 2) future harm to obtain prospective relief. But she could not have been injured before joining the Plan. Nor is it plausible that the Plan's fiduciaries could have identified, formulated, and implemented any changes to the Plan within the fourteen-day window between Ms. Nohara becoming a participant and bringing suit. And even if changes could have been made

---

[1] *See Bangalore v. Froedtert Health, Inc.*, (E.D. Wis., filed June 12, 2020); *Albert v. Oshkosh Corp.*, 20-cv-901-WCG (E.D. Wis., filed June 16, 2020); *Soulek v. Costco Corp.*, No. 1:20-cv-937-WCG (E.D. Wis., filed June 23, 2020); *Cotter v. Matthews Int'l Corp.*, No. 1:20-cv-1054-WCG (E.D. Wis., filed July 13, 2020); *O'Driscoll v. Plexus Corp.*, No. 1:20-cv-1065-WCG (E.D. Wis., filed July 14, 2020); *Marvin v. Mercy Health Corp.*, No. 3:20-cv-50293 (N.D. Ill., filed Aug. 6, 2020); *Lange v. Infinity Healthcare Physicians, S.C.*, No. 3:20-cv-737 (W.D. Wis., filed Aug. 7, 2020); *Glick v. Thedacare, Inc.*, 1:20-cv-1236-WCG (E.D. Wis., filed Aug. 12, 2020); *Woznicki v. Aurora Health Care, Inc.*, No. 2:20-cv-1246-PP (E.D. Wis., filed Aug. 14, 2020).

1

on day one of Ms. Nohara's participation (July 2, 2020), the most she can envision is pennies worth of injury—literally, *ten cents*. There is no federal jurisdiction for *de minimis* claims. This holds true regardless of whether the alleged harm is retrospective, ongoing, or prospective, and Plaintiff has not alleged any facts supporting prospective relief or how her *de minimis* injury will morph into something of jurisdictional significance.

Even if Ms. Nohara could articulate an injury-in-fact sufficient to invoke this Court's authority (and could also make claims on behalf of *every other* participant for decisions predating, by years, her participation in the Plan), her theories of liability run headlong into a sequence of binding precedents from the Seventh Circuit. *See Divane v. Northwestern Univ.*, 953 F.3d 980 (7th Cir. 2020); *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009).

In some circumstances, courts will generously afford a plaintiff the opportunity to cure pleading defects. Here, Ms. Nohara's pleading deficiencies are sufficiently egregious that the Court should dismiss the complaint and close the case.

**BACKGROUND**[2]

Plaintiff recently became a participant in the Plan, which is an individual account defined contribution plan organized as a 401(k) defined contribution pension plan under 29 U.S.C. § 1102(2)(A) and § 1002(34). Compl. ¶¶ 3, 22. The Plan's participants have individual accounts, which are funded through a combination of employee salary deferrals and employer contributions made by Prevea. *Id.* ¶ 22. Participants invest their accounts in one or more of the Plan's various

---

[2] Defendants' recitation of the factual background is based on the allegations set forth in the complaint. Although numerous complaint allegations regarding the Plan and how it was administered are factually inaccurate, Defendants assume that the complaint's allegations are true for the limited purpose of the instant motion. *Ashcroft v. al-Kidd*, 563 U.S. 731, 734 (2011) (In evaluating "a motion to dismiss, [the court] accept[s] as true the factual allegations in [the] complaint.").

2

investment options. *Id.* ¶ 31. During the six-year period supposedly covered by this lawsuit, the funds offered within the Plan's investment lineup changed, though the overall structure remained similar. *Id.* The lineup consisted of a diverse selection of investment options, including (i) 11 mutual funds managed by various fund providers, (ii) a "balanced fund" that invests in stocks and bonds, (iii) a "stable value fund" characterized by a guaranteed rate of return, (iv) an annuity, and (v) a full complement of "target date funds" (TDFs) that provide a diversified blend of investments whose asset allocations follow a glide path that becomes more conservative as investors approach their target retirement date. *Id.* at pp. 9-10.

The Plan's investment lineup included funds that are actively managed, which means that an investment manager attempts to outperform the market, as well as funds that are passively managed, which seek to match a market index. *Id.* (e.g., "Vanguard Institutional Index" and "Vanguard Small Cap Growth Index"). The Plan offered funds providing access to large- and small-cap equities, and to foreign and domestic securities. *Id.* The Plan also included multiple "low-cost" investment options, including some that charge less than two basis points (0.02%) per year. *See, e.g.,* **Ex. 1** (2020 Participant Fee Disclosure), at 5.[3] Finally, throughout the class period, the Plan offered two self-directed brokerage account options for those participants who wanted the ability to invest in a wide array of funds that were not in the Plan's regular investment lineup. Compl. ¶ 31.

Although Prevea is the "plan administrator," Compl. ¶ 17, the Plan's day-to-day and routine administrative services are outsourced to a third-party service provider or "recordkeeper,"

---

[3] The Court can consider publicly available documents or materials that Plaintiff references in the Complaint on a Rule 12(b)(6) motion. *See, e.g., Hecker*, 556 F.3d at 582-83 (citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)). Specifically, this Court may consider fund prospectuses, the Plan's Forms 5500 filed with the Department of Labor ("DOL"), and the Plan's 404a-5 fee disclosures mandated by ERISA. *See id.* (prospectuses and related materials); *see also, e.g., Marks v. Trader Joe's Co.*, 2020 WL 2504333, at *4 (C.D. Cal. Apr. 24, 2020) (Forms 5500); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *11 (S.D.N.Y. Oct. 7, 2019) (fee disclosures).

which was Transamerica Retirement Solutions throughout the class period. *Id.* ¶¶ 39-40. The Plan's recordkeeper is paid for the services it provides to the Plan out of the Plan's assets, which included an arrangement known as "revenue sharing." *Id.* ¶¶ 44, 47. In a revenue sharing arrangement, the recordkeeper is paid from the fees collected by the investment managers, rather than with a direct debit to participant accounts. *Id.*

In her complaint, Plaintiff asserts three causes of action. In Count I, Plaintiff alleges that Prevea, The Board of Directors of Prevea, and John Does 1-30 (collectively, "Defendants") breached their fiduciary duties of loyalty and prudence with respect to their administration of the Plan. *Id.* ¶¶ 124-131. Plaintiff's allegations and theories in that count fall into two categories: (i) those related to the Plan's recordkeeping arrangement and (ii) those related to the Plan's investment lineup. With respect to the recordkeeping arrangement, Plaintiff alleges that Defendants failed to properly monitor the Plan's recordkeeping expenses, should not have used revenue sharing to pay those expenses, and allowed Transamerica to collect "unreasonable" compensation for its services. *Id.* ¶¶ 39-54. As for the investment lineup, Plaintiff alleges that the Plan's investment options were too expensive, *id.* ¶¶ 35-38, should not have included actively managed funds, *id.* ¶¶ 66-78, did not include the lowest-cost share class for each investment, *id.* ¶¶ 55-65, and included imprudent "stable value funds." *Id.* ¶¶ 79-86.

Counts II and III are ancillary to Count I. In Count II, Plaintiff alleges that Prevea failed to fulfill its fiduciary duty to monitor the performance of the individuals responsible for plan administration and failed to remove those whose performance was allegedly inadequate. *Id.* ¶¶ 132-38. In Count III, Plaintiff alleges that Defendants engaged in transactions prohibited by ERISA § 406(a)(1)(C) when they used Plan assets to pay for services provided by two of the Plan's investment advisors, Robert W. Baird & Co. ("Baird") and Harbor Wealth Management LLC

("Harbor"). *Id.* ¶¶ 139-144. For the reasons set forth below, Plaintiff has failed to plausibly allege any actionable claim under ERISA and the complaint should be dismissed with prejudice.

## **ARGUMENT**

### I.  **PLAINTIFF'S FOURTEEN DAYS IN THE PLAN DOES NOT GIVE HER STANDING TO BRING THIS LAWSUIT**

"Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Rest. of De Pere*, LLC, 843 F.3d 724, 726 (7th Cir. 2016) (quoting *Freedom from Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988) (alteration omitted)). To demonstrate standing, Plaintiff must plausibly allege a particularized injury that would be redressed by the requested judicial relief. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

It makes no difference that this case is a putative class action. "Standing cannot be acquired through the back door of a class action." *Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (internal quotation marks omitted). Rather, the named plaintiff must satisfy the requirements of Article III. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). As with any other case, Plaintiff must "demonstrate standing for each claim [s]he seeks to press" and "'for each form of relief' that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

Although Plaintiff has filed this ERISA lawsuit purporting to act "on behalf of the Plan," (Compl. ¶ 13), "[t]here is no ERISA exception to Article III." *Thole v. U. S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020). It is not sufficient for a plan participant to simply be a member of a retirement plan that has allegedly sustained injury; the plaintiff must be able to demonstrate that she has personally been injured by the challenged conduct. *See id.* at 1620.

5

Against that backdrop, Plaintiff manifestly lacks standing. She cannot challenge actions that preceded her *fourteen days* of participation in the Plan, because those actions could not have affected her not-yet-extant account. During her brief stint as a participant in the Plan, Plaintiff would need to be able to allege that a reasonable fiduciary would have followed a different course of action and that Prevea's failure to follow that course caused injury. It is, of course, impossible for Plaintiff to make any such allegations. Because of the need to negotiate contracts, implement changes on technology platforms, provide notices to plan participants, and the like, changes to retirement plans take months to execute, not hours or days.

And even if Plaintiff were advancing the (profoundly implausible) theory that the Plan's fiduciaries should have changed the Plan's lineup the day that she joined the Plan, her assertion of damages amounts to just *ten cents*. On July 2, 2020, Plaintiff invested $1,810.37 in the 2035 target date fund. *See* **Ex. 2** (Decl. of Patty Raisleger at ¶¶ 2-4).[4] She alleges that a different version of that fund was available that charged an annual fee of 0.32% versus 0.46%. That disparity of 0.14% equates to $2.53 over the course of an entire year—or ten cents over a fourteen-day period.[5]

Federal jurisdiction is not available for such *de minimis* claims. The *de minimis* doctrine provides that some claims are "so fleeting and slight that they do not warrant pursuing in federal court." *Freedom From Religion Found., Inc. v. City of Green Bay*, 581 F. Supp. 2d 1019, 1033 (E.D. Wis. 2008) (Griesbach, J.). The rule that "the law doesn't concern itself with trifles" applies

---

[4] Because the question of Article III standing goes to jurisdiction, the Court can consider "evidentiary materials addressed to the jurisdictional question … at the dismissal stage." *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).

[5] None of the other theories of liability in Plaintiff's complaint has *any* damages associated with Plaintiff's fourteen-day tenure. Of note, Nohara alleges that a different vendor could have provided a target date fund with an even lower fee than 0.32%. Compl. at 22. But the alternative mentioned also followed a very different investment strategy, and Plaintiff does not allege that the alternative performed better during the critical fourteen-day period.

even to constitutional challenges. *Brandt v. Bd. of Educ. of City of Chicago*, 480 F.3d 460, 465 (7th Cir. 2007). In *Brandt*, the Seventh Circuit found that "the damages sustained by an eighth grader as a consequence of missing phys ed and labs on nine days out of an entire school year are minuscule to the point of nonexistent." *Id.*; *see also Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 615 (N.D. Ill. 2009) (explaining that a claim for conversion of an "inexpensive ball point pen" and "one sheet of paper from [a] notebook" would be "so insignificant or trifling that the *de minimis* doctrine would bar the plaintiff from proceeding"). Plaintiff plainly suffered less harm in her fourteen days as a Plan participant than the plaintiff who missed nine school days of school in *Brandt*. And the theft of a ballpoint pen can reasonably be expected to result in greater harm than the pennies allegedly suffered by Plaintiff.

Plaintiff's lack of standing for her requested retrospective remedies cannot be saved by alleging ongoing or prospective harm; a bedrock rule of standing is that a plaintiff must establish standing separately for retrospective and prospective remedies. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (finding that plaintiff had standing to bring claim for damages caused by a chokehold, but not for an injunction against the police's use of chokeholds going forward). Here, Plaintiff has not pled any factual allegations supporting an ongoing injury. To the extent her allegations of past harm could constitute a basis for prospective relief, including Plaintiff's request for an injunction, these allegations are still barred by the *de minimis* doctrine. *See Treadway Cos., Inc. v. Care Corp.*, 638 F.2d 357, 380 n.44 (2d Cir. 1980) (finding lack of standing for a failure to disclose claim that was "a *de minimis* violation, not warranting injunctive relief"); *Payne v. TR Assocs., LLC*, 880 F. Supp. 2d 702, 705 (E.D.N.C. 2012) ("federal courts have denied claims on standing grounds where the likelihood of future harm was *de minimis*"). Whatever the truth of Plaintiff's allegations, there is certainty that her future harm would remain *de minimis*.

738108682.10 1-Oct-20 14:31

ERISA fiduciary breach class actions are costly to litigate. In *Divane*, discovery commenced before the motion to dismiss was resolved. The complaint was ultimately dismissed (and the dismissal was affirmed on appeal). But before the dismissal, Northwestern apprised the district court that it had already spent $4 million defending the claims through discovery. *See* Declaration of Casey T. Grabenstein ¶ 28, *Divane*, No. 1:16-cv-08157, ECF No. 154 (N.D. Ill. May 7, 2018). This case shares its lack of merit with *Divane* (indeed, many of the claims are foreclosed by the Seventh Circuit's decision). Even accepting all of Plaintiff's claims as true, her ten-cent lawsuit does not trigger this Court's jurisdiction.

## II. PLAINTIFF'S CLAIMS ARE FORECLOSED BY BINDING SEVENTH CIRCUIT PRECEDENT

In addition to Plaintiff's failure to meet the minimum threshold for federal jurisdiction, she has failed to state a plausible claim for relief that would survive the ordinary standards of Rule 12(b)(6).

It has long been recognized in ERISA fiduciary breach cases that a motion to dismiss is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). As elsewhere, a court should not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Rather, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must be "plausible," meaning that it raises "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. In making that determination, the Court must accept well-pleaded allegations as true and draw reasonable inferences in the plaintiff's favor, but it "need not accept as true statements of law or unsupported conclusory factual allegations." *Divane*, 953 F.3d at 987. Mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In a trilogy of cases addressing similar ERISA fiduciary breach claims, the Seventh Circuit has developed a body of controlling law that forecloses Plaintiff's claims here. Under *Hecker*, *Divane*, and *Loomis*, each of Plaintiff's theories fails irretrievably.

### A.     Plaintiff's Fiduciary Breach Claim Should be Dismissed (Count I)

Plaintiff's claim that Defendants breached ERISA's fiduciary duties of prudence and loyalty is devoid of facts plausibly supporting either theory. To survive a motion to dismiss, an ERISA plaintiff "must plausibly allege action that was objectively unreasonable." *Divane*, 953 F.3d at 988. Under that standard, a plaintiff must show that "a prudent fiduciary in the same position could not have concluded that the alternative action would do more harm than good"— that is, the path not taken must have been unambiguously better. *Id.* (quoting *Amgen Inc. v. Harris*, 136 S. Ct. 758, 760 (2016)). This requires the plaintiff to either (i) identify specific procedural deficiencies that deviated from industry standards or (ii) set forth well-pleaded "circumstantial factual allegations" from which the Court may "reasonably 'infer … that the process was flawed.'" *PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718, 727 (2d Cir. 2013) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009)). Plaintiff does neither.

#### 1.     *Plaintiff's Recordkeeping Fee Allegations Are Insufficient*

Plaintiff's recordkeeping fee claim is premised on three overarching allegations: (1) Defendants did not adequately monitor the Plan's recordkeeping fees; (2) the Plan imprudently relied on revenue sharing to pay the Plan's recordkeeping fees; and (3) whatever the Plan paid for recordkeeping during any of the six years at issue, an amount not pled, the Plan surely paid too much. *E.g.*, Compl. ¶¶ 39-54. Plaintiff's allegations, whether taken individually or collectively, fail to plausibly allege any failure of the fiduciary process. Rather, they simply illustrate the reality that plan fiduciaries need to make choices—any of which could be subject to 20/20 hindsight or

second-guessing. But the ability to second-guess a decision years after the fact does not make that decision a plausible fiduciary breach.

a.    <u>Plaintiff's allegations regarding Defendants' failure to monitor the Plan's recordkeeping fees lack substance</u>

To state a claim for fiduciary breach, Plaintiff must allege facts sufficient to support a finding that the Plan's fees were attributable to Defendants' failure to follow a prudent process. *See Brock v. Robbins*, 830 F.2d 640, 647-48 (7th Cir. 1987) (distinguishing between the prudence of a fiduciary's process in agreeing to a fee and the reasonableness of the fee itself). But Plaintiff's complaint is devoid of any allegations regarding the process that Defendants used to evaluate the Plan's recordkeeping fees. Without any cognizable theory as to what Defendants supposedly did wrong, Plaintiff relies on generalities. She simply concludes that Defendants did not "pay close attention" to the Plan's recordkeeping fees and allegedly failed to "identify all fees." Compl. ¶¶ 46-47. Plaintiff provides no bases for these conclusions, let alone proffers any details about Defendants' supposedly deficient process. Her assertions about conduct that occurred years before she started participating in the Plan are simply too vague and conclusory to support a class-action lawsuit. *Iqbal*, 556 U.S. at 678 (complaint must offer more than "naked assertions devoid of further factual enhancement").

Plaintiff alleges that Defendants should have, but did not, use a "competitive bid process for recordkeeping services" for a "significant period of time." Compl. ¶ 52. That conclusory allegation—which is based on "information and belief" and simply assumes Defendants did not engage in a competitive bid process—is too vague to state a plausible claim. *Id.* And without proffering any detail as to what constitutes a "significant period of time," Plaintiff's allegation says nothing about the prudence of the process Defendants employed.

10

The Seventh Circuit has rejected conclusory allegations about competitive bidding like Plaintiff's allegations here. *See Divane*, 953 F.3d at 990 (affirming the dismissal of the plaintiffs' fiduciary breach claim even though they "alleged that [the defendants] should have solicited competitive bids for a fixed per-capita fee"). So too have other courts, recognizing that there are many ways to negotiate a contract with a vendor and competitive bidding is just one of them. *See, e.g., Del Castillo v. Cmty. Child Care Council of Santa Clara County, Inc.*, 2019 WL 6841222, at *5 (N.D. Cal. Dec. 16, 2019) ("[the] absence of competitive bidding . . . without more, does not support Plaintiffs' allegations that the [defendants] acted imprudently"); *Marks v. Trader Joe's Co.*, 2020 WL 2504333, at *7 (C.D. Cal. Apr. 24, 2020) (same). Bare allegations that a fiduciary should have engaged in competitive bidding are insufficient to state a claim because nothing in ERISA compels competitive bidding *at all*, much less at any particular intervals. *See, e.g.*, *White v. Chevron Corp.*, 2016 WL 4502808, at *14 (N.D. Cal. Aug. 29, 2016) ("[N]othing in ERISA compels periodic competitive bidding.").

> b. <u>Plaintiff's allegations regarding the structure of the recordkeeping arrangement directly conflict with Seventh Circuit law</u>

Unable to plead any non-conclusory facts concerning Defendants' process for monitoring the Plan's recordkeeping fees, Plaintiff focuses on the *structure* of the Plan's recordkeeping arrangement—specifically, the use of revenue sharing to cover costs. Compl. ¶¶ 42-44. But the Seventh Circuit has explicitly rejected the theory that a plan must use a per-participant fee arrangement instead of revenue sharing to pay for recordkeeping. *See Divane*, 953 F.3d at 989 (upholding the dismissal of a claim that defendants breached their fiduciary duty by using revenue sharing instead of a "flat recordkeeping fee"). As the *Divane* court noted, recordkeeping fees "need not be individually allocated or based on any specific fee structure." *Id.* at 990. This is because a revenue sharing arrangement "violates no statute or regulation," *Hecker*, 556 F.3d at 585, and can

offer benefits over a "flat" or "per participant" arrangement, *Loomis*, 658 F.3d at 672-73 ("A flat-fee structure might be beneficial for participants with the largest balances, but, for younger employees and others with small investment balances, a capitation fee could work out to more[.]"). Other courts have likewise rejected the notion that the use of revenue sharing to pay plan fees is somehow indicative of imprudence. *See, e.g.*, *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014) (explaining that revenue sharing is "common and acceptable").

Nor is the fact that revenue sharing is an indirect form of payment rather than Plaintiff's preferred "[b]est practice. . . to pay for the expenses directly" suggestive of imprudence. Compl. ¶ 43. As the Seventh Circuit has held, the decision of whether to pay expenses directly from the Plan is a matter of plan design, not administration. *Loomis*, 658 F.3d at 671 ("[Plaintiffs] press an argument that was not presented to the panel in *Hecker*: that the Plan should have paid the expenses directly, allowing participants to reap the gross rather than the net return. But whether to cover these expenses is a question of plan design, not of administration."). Matters of plan design are "settlor functions, not subject to the fiduciary duties beyond ERISA § 208," not pled here. *Chesemore v. All. Holdings, Inc.*, 886 F. Supp. 2d 1007, 1052 (W.D. Wis. 2012).

> c. Plaintiff's guesswork regarding the Plan's recordkeeping fees lacks any plausibility

Lastly, Plaintiff attacks the *amount* of the Plan's recordkeeping fees, which she labels "excessive" and "not [] reasonable." Compl. ¶ 54. But Plaintiff does not even attempt to allege how much the Plan paid for recordkeeping. Addressing analogous recordkeeping fee claims, courts have held that speculation and "guess-work" regarding a plan's recordkeeping fees are insufficient to state a claim, let alone where a plaintiff—like Plaintiff here—does not even attempt the guess-work. *Marks*, 2020 WL 2504333, at *6 ("Plaintiffs' guess that the Plan pays $140 per participant for recordkeeping fees has 'no factual basis,' and Plaintiffs admit that they do not actually know

how much the recordkeeping fees are."); *White*, 2016 WL 4502808 at \*18 (same). Without any

allegation of what the Plan paid for recordkeeping, Plaintiff fails to plausibly allege an actionable

recordkeeping claim. *See Divane*, 953 F.3d at 984 (holding that an allegation that plan paid

between $153-$213 per participant failed to state a claim); *Martin v. CareerBuilder, LLC*, 2020

WL 3578022, at \*4 (N.D. Ill. July 1, 2020) (allegations of $131-$222 per participant was

insufficient to state a claim).

 In addition, the complaint is devoid of any facts describing the services that Transamerica

provided to the Plan during the class period. As Plaintiff herself acknowledges, recordkeepers

"provide a broad range of services" and retirement plans "have the ability to customize the package

of services they receive." Compl. ¶ 40. Notwithstanding this truism, Plaintiff fails to provide any

information regarding "the package of services" that she received during her fourteen days as a

participant and the other participants received during the class period. Without alleging any facts

regarding the services Transamerica provided to the Plan, Plaintiff cannot plausibly allege that its

compensation was "excessive" or "unreasonable." *Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th

Cir. 2009) (denying petition for rehearing and affirming that dismissal of the excessive fee claims

was appropriate because "the complaint is silent about the services . . . participants received");

*Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (affirming dismissal

where plaintiffs "fail[ed] to allege that the fees were excessive relative to the services rendered").

 Finally, Plaintiff fails to proffer any "sound basis for comparison" by which to judge the

reasonableness of the Plan's recordkeeping fees. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822

(8th Cir. 2018). Plaintiff does not allege that the Plan could have negotiated a materially better

deal with Transamerica; nor does she allege that a competitor would have agreed to provide the

same services for a fee that was so low that any prudent fiduciary would have been compelled to

13

undertake the complex process of switching recordkeepers. *Divane*, 953 F.3d at 988 (explaining that a plaintiff must show that no hypothetical prudent fiduciary would have made the same choice as the defendant). Rather, Plaintiff simply states that "given the numbers" other plans allegedly paid different vendors for different services, the Plan's recordkeeping fees were excessive. Compl. ¶ 53.

For example, Plaintiff references an unidentified lawsuit in which the plaintiff merely *alleged* in a complaint that $54 per participant for recordkeeping a different plan was excessive. *Id.* ¶ 53. Equally irrelevant is Plaintiff's reliance on a plaintiffs' expert's opinion that plans "similarly sized" to Boeing retirement plan should pay $37-42 per participant, when Boeing's plan has ***117*** times more participants than the Plan. *Spano v. The Boeing Co.*, No. 06-cv-743, ECF No. 466, at 26 (S.D. Ill. Dec. 30, 2014) (Plaintiffs' expert, Al Otto opined that "a similarly sized plan should have paid no more than $37-$42 per participant per year"); **Ex. 3** (2014 Boeing Form 5500, at 2, showing Boeing had 216,431 participants in the year of the expert's opinion); **Ex. 4** (2014 Prevea Form 5500, at 2, showing the Plan had 1,702 participants). Moreover, the court in *Spano* never endorsed the expert's opinion, *Spano*, Dkt. 466 at 26 (finding Otto's opinion "is flawed"), and he was recently excluded in another case for his unreliable opinion that a plan should have paid $35-40 per participant in recordkeeping fees.; *Cunningham v. Cornell Univ.*, 2019 WL 4735876, at *9 (S.D.N.Y. Sept. 27, 2019) (excluding Otto as an expert witness for his lack of "recognizable, describable methodology" in determining the market rate for recordkeeping fees).

Plaintiff's comparison to another Fortune 100 company, Nike, is also immaterial as Nike's plan is ***13*** times larger than the Plan. *Compare* **Ex. 5** (2015 Nike Form 5500, at 2, showing Nike had 24,776 participants) *with* **Ex. 6** (2015 Prevea Form 5500, at 3, showing the Plan had 1,856 participants). Given Plaintiff's own assertion that economies of scale cause per-participant

14

recordkeeping fees to decrease as the size of the plan increases, inferring that Defendants caused the Plan to overpay for recordkeeping because Boeing and Nike allegedly have lower recordkeeping fees is analogous to inferring that a local convenience store overpaid its supplier for Kleenex simply because Walmart and Costco are able to acquire Kleenex at a lower cost. That is not a plausible inference.

2. *Plaintiff's Allegations Regarding the Plan's Investment Options Are Similarly Baseless*

Plaintiff's challenge to the Plan's investment options fares no better. Without providing any factual allegations, Plaintiff contends that Defendants lacked a "viable methodology for monitoring" the funds. *E.g.*, Compl. ¶¶ 37, 86. As with much of the complaint, this allegation was copied and pasted from Plaintiff's counsel's other complaints without regard to its applicability to the Plan. Had Plaintiff actually reviewed the Plan's investment options in the five-plus years before she began participating in July 2020, she would have realized that, during the class period, Defendants made at least 17 changes to the funds offered in the Plan's investment lineup that included 30 total funds. *See* **Ex. 8** (spreadsheet compilation of Plan's Forms 5500 list of funds). As a matter of basic logic, changes to a meaningful percentage of the Plan's investments over time does not support an inference that Defendants were asleep at the wheel. Rather, it supports the opposite conclusion—that Defendants were appropriately monitoring the Plan's investments. Courts have rejected duty of prudence claims based on similar, unsupportable inferences. *See, e.g., Martin*, 2020 WL 3578022, at *6 (reasoning that fiduciary's changes to the fund lineup "suggest[s] that Defendants did have a prudent process"); *White I*, 2016 WL 4502808, at *17 (holding that change of investments during class period "create[d] a plausible inference that the Plan fiduciaries were attentively monitoring the fund").

15

a.      <u>Plaintiff's allegations that the investment options were "too expensive" collide head-on with Seventh Circuit precedent</u>

Plaintiff's contention that the Plan's lineup included "high fee" investment options and excluded purportedly "low fee" alternatives, *id.* ¶ 37, runs headlong into binding precedent. In *Hecker*, the Seventh Circuit explicitly rejected the plaintiff's claim that certain of the plan's investment options should have been swapped out for lower-cost alternatives. The court found the potential for cost savings to be "beside the point." 556 F.3d at 586. Then, in *Loomis*, the Seventh Circuit held that the plaintiffs' "paternalistic" efforts to protect plan participants from "high-expense" investment options were incompatible with ERISA. 658 F.3d at 673. And, most recently, the Seventh Circuit reaffirmed the principles in *Hecker* and *Loomis* by holding in *Divane* that the fiduciary's decision to include "high fee" investment options on a retirement plan's investment lineup was not indicative of imprudence. 953 F.3d at 989 ("Rather than compare Northwestern's actions to those of a 'hypothetical prudent fiduciary,' plaintiffs criticize what may be a rational decision for a business to make (and, indeed, several do) when implementing an employee benefits program."). Against this controlling legal backdrop, Plaintiff's challenge to the Plan's investment fees rings hollow.

Plaintiff's investment fees challenge also fails because the Plan offered participants a prudent range of investment alternatives. *See Loomis*, 658 F.3d at 670 (discussing *Hecker* and noting that, "[b]y offering a wide range of options . . . Deere's plan complied with ERISA's fiduciary duties."). As discussed above, the Plan offered mutual funds, a stable value fund, an annuity, a money market fund, bond indexes, and a full complement of target date funds. *See supra*, at 3. The Plan's lineup included investment options with fees as low as 0.02% per year as well as multiple index or passively managed options. *Id.* The expense ratios of the funds offered by the Plan, ranging from 0.02% to 1.30%, mirror or are lower than expense ratios the Seventh Circuit

738108682.10 1-Oct-20 14:31

has repeatedly deemed reasonable as a matter of law and indicative of a prudent fiduciary process. *Compare Divane*, 2018 WL 2388118, at *3 (ranging from 0.05% to 1.89%); *Loomis*, 658 F.3d at 669 (ranging from 0.03% to 0.96%); and *Hecker*, 556 F.3d at 586 (ranging from 0.07% to just over 1%), *with* **Ex. 1, 7** (Plan's 2020 fee disclosure; Plan's 2014 fee disclosure).

In addition, Plan participants had access to hundreds of other investments through a self-directed brokerage account. *Id.* The Seventh Circuit has repeatedly held that diversified investment lineups strikingly similar to the Plan's are incompatible with an inference of imprudence. *See Divane*, 953 F.3d at 992 (decision to include actively-managed funds alongside index funds was not evidence of imprudence); *Loomis*, 658 F.3d at 673-74 (fiduciary does not act imprudently by providing a range of options and then "leav[ing] choice to the people who have the most interest in the outcome"); *Hecker*, 556 F.3d at 586 (no breach of fiduciary duty where plan participants could choose to invest in 26 investment options and more than 2,500 mutual funds through a brokerage window). If Plaintiff had wanted to invest in only "low cost" index funds—as appears to be her preference based on the complaint notwithstanding her own selection of a single target date fund—she had ample options to choose from and was not "forced to stomach an unappetizing menu." *Divane*, 953 F.3d at 991; *Martin*, 2020 WL 3578022, at *6. In fact, several of the funds Plaintiff identifies as "low cost alternative[s] available to the Plan" are materially similar to funds that are already in the Plan that she chose not to invest in. *See* Compl., pp. 21-23 (identifying Vanguard Small-cap Value Index Fund; Vanguard Large-Cap Index Fund); *with* **Ex. 3**, 2014 Plan Form 5500, at 3 (Plan offering the Vanguard Small Cap Growth Index Instl and Vanguard Institutional Index, which tracks the S&P 500).

Nor does Plaintiff's attempt to compare the Plan's investment fees to her cherry-picked alternatives demonstrate a fiduciary breach. *See* Compl., pp. 12-15. For a comparison of an

investment's fees to plausibly suggest imprudence, the investment must be compared to a "meaningful benchmark." *See, e.g.*, *Meiners*, 898 F.3d at 822. Plaintiff's comparisons are woefully deficient.

With respect to each of the Plan's allegedly "high cost" funds, Plaintiff identifies a *single* purportedly lower-cost alternative. *See* Compl., pp. 21-23. The mere fact that Plaintiff was able to "scour the market" of thousands of investment choices and identify one lower-cost fund says nothing about whether the Plan's investments were reasonable, much less the prudence of its fiduciaries in selecting and monitoring those investments. *Hecker*, 556 F.3d at 586 (holding that plan fiduciaries are under no obligation to "scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)"); *Meiners*, 898 F.3d at 823 ("[T]he existence of a cheaper fund does not mean that a particular fund is too expensive *in the market generally* or that it is otherwise an imprudent choice."). Further, Plaintiff fails to offer any explanation for why her handpicked alternative funds are appropriate benchmarks. In fact, several of Plaintiff's proposed alternatives have been explicitly rejected by courts as unreliable. *See Meiners*, 2017 WL 2303968, at *3 (Vanguard's target date funds were not reliable comparators for assessing investment costs); *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 345 (2d Cir. 2006) ("That a mutual fund has an expense ratio higher than Vanguard, a firm known for its emphasis on keeping costs low, raises little suspicion . . . .").

        b.    Plaintiff's allegations that the Plan wrongly included actively-managed investments have routinely been rejected

Plaintiff's next contention—that Defendants breached their fiduciary duties by selecting and retaining actively managed mutual funds—is also foreclosed by binding Seventh Circuit precedent. The Seventh Circuit has long held that a fiduciary does not breach its fiduciary duties by including actively managed investments in a diversified fund lineup. *See Loomis*, 658 F.3d at

18

673 (holding that actively-managed investments are appropriate options to include in investment lineup); *accord Divane*, 2018 WL 2388118, at *6. Where a fiduciary includes a participant's preferred investment in a diversified fund lineup, as Defendants did here, he does not breach his fiduciary duty by also including additional alternative investment options. *See Divane*, 953 F.3d at 991 ("[T]he types of funds plaintiffs wanted (low-cost index funds) were and are available to them, eliminating any claim that plan participants were forced to stomach an unappetizing menu."); *Martin*, 2020 WL 3578022, at *6 ("Defendants' failure to offer every index fund under the sun is not, in and of itself, imprudent.").

The courts' rejection of Plaintiff's argument against actively managed funds makes good sense. Actively and passively managed funds have materially different management approaches. Actively managed funds involve professional investment managers who try to beat the market through the selection of individual investments. *Davis v. Washington Univ.*, 960 F.3d 478, 485 (8th Cir. 2020). Passively managed funds, on the other hand, simply try to mimic a market index. *Id.*; *see also Loomis*, 658 F.3d at 670. While Plaintiff apparently believes that passive management is always better, "analysts continue to debate whether active or passive management is a better approach." *See Davis*, 960 F.3d at 485 (citing Dan M. McGill et al., *Fundamentals of Private Pensions*, 788–89 (8th ed. 2005)). As the Eighth Circuit succinctly explained, "it is not imprudent for a fiduciary to provide both [active and passive] investment options. They have different aims, different risks, and different potential rewards that cater to different investors. Comparing apples and oranges is not a way to show that one is better or worse than the other." *Id.* (internal citation omitted); *see also* Restatement (Third) of Trusts § 90 cmt. h(2) ("Prudent investment principles also allow the use of more active management strategies by trustees.").

738108682.10 1-Oct-20 14:31

c.      Plaintiff's allegations related to the Plan's stable value fund are both disconnected and confused

Plaintiff's next target in her scattershot complaint is the Plan's stable value fund. Despite Plaintiff's lengthy disquisition on stable value funds, Compl. ¶¶ 79-86, she notably does *not* allege that stable value funds are *per se* imprudent investment options for 403(b) plans. Rather, she alleges, without any factual support, that the Plan's stable value fund, the Transamerica Guaranteed Investment Option, was imprudent. Compl. ¶ 86. The allegations are so conclusory and non-specific to the Plan that the Complaint does not even reference the Transamerica Guaranteed Investment Option by name, let alone plead any facts about that fund. Such conclusory pleadings are insufficient; a plaintiff cannot satisfy her burden at the pleading stage through mere conclusions and a "formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555; *see also Divane*, 953 F.3d at 987 (dismissing "unsupported conclusory factual allegations").

For instance, Plaintiff's contention that Defendants "did not have a viable methodology for monitoring the costs or performance" of the Plan's stable value fund is not a well-pleaded factual allegation; it is simply another way of saying that Defendants allegedly failed to employ a "prudent" process. Compl. ¶ 86. Plaintiff also alleges, without any factual support, that "comparable products" with higher crediting rates were available "from other [unidentified] providers" and "it is likely that identical product[s]" were available from unidentified "insurance companies" with higher crediting rates. *Id*. This is pure speculation. Plaintiff's failure to proffer any facts to establish the existence of "comparable" or "identical" stable value fund products that were more prudent than the Plan's funds is fatal to her claim. In fact, she does not offer a *single* comparator stable value fund.

20

d. **Plaintiff's share class allegations disregard a critical component of varying share classes**

Finally, Plaintiff alleges that Defendants breached their fiduciary duties because the Plan's investment lineup included the retail class of certain mutual funds when an institutional share class was allegedly available. This theory does not stand up to scrutiny. When an investment company offers mutual funds, it sometimes will offer multiple share classes of a particular fund. The different share classes may have different administrative characteristics; for example, one share class might collect revenue to be shared with the recordkeeper to offset administrative expenses (*i.e.*, revenue sharing), whereas another share class might collect no such revenue, thereby requiring a separate and direct out-of-pocket payment by the plan participants for the Plan's administrative expenses. *See, e.g., Divane*, 2018 WL 2388118, at *3 (observing that "retail expense ratios" often "cover record-keeping" costs). For Plaintiff to plausibly allege that Defendants breached their fiduciary duties by offering the wrong share classes, she must plausibly account for the differences associated with the different share classes. *See Patterson v. Capital Grp. Cos., Inc.,* 2018 WL 748104, at *5 (C.D. Cal. Jan. 23, 2018) (granting motion to dismiss when plaintiff "allege[d] only that the R6 share class was cheaper and Defendants could have switched share classes earlier" because "fiduciaries are required to consider factors beyond price when choosing investment options") (citing *Loomis*, 658 F.3d at 671-72).

For starters, despite citing one case and a DOL publication about retail share classes generally, Plaintiff does not even allege that the Plan offers retail share classes. Notably, the one example cited in the complaint is the Plan's suite of T. Rowe Price Retirement Target-Date *Trusts*.

21

Compl., pp 16-17. As evident by the name, these target date funds are not mutual funds; they are collective investment trusts—investment vehicles available only to institutional investors.[6]

In any event, even if Plaintiff were alleging that cheaper collective investment trusts were available—and she is not—she would need to account for the tradeoffs among the different options. *See Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 912 (7th Cir. 2013) ("True, some share classes are more expensive than others, but the cheapest option may not inevitably be the best option. There is also no particular reason to think [the defendants] would not seek to make up the revenue it missed by offering cheaper share classes by charging higher direct fees[.]"). She fails to do so.

Plaintiff's share class allegations are simply a repackaged way of claiming that the Plan did not offer the lowest cost fund at every turn. The Seventh Circuit and its district courts have repeatedly rejected such an argument. *See Loomis*, 658 F.3d at 671-72; *Divane*, 2018 WL 2388118, at *3 (observing that "retail expense ratios" often "cover record-keeping" costs), *aff'd* 953 F.3d 980; *Martin*, 2020 WL 3578022, at *4 ("*Divane* clarified that a fund's failure to invest in institutional as opposed to retail funds does not give rise to an inference of imprudence when a plan offers cheaper alternatives."). In fact, in *Divane*, the plaintiffs alleged that the fiduciaries were imprudent by failing to utilize lower-cost share classes in more than *100 different investment options*. The Seventh Circuit nonetheless held that the plaintiffs' allegations did not create any inference of imprudence. *Divane*, 953 F.3d at 992. Other courts have followed suit. *See White v. Chevron Corp.,* 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017) ("[A]mple authority holds

---

[6] *Compare* https://prospectusexpress.broadridge.com/summary.asp?doctype=pros&clientid=trowepll&fundid=74149P309 at "How is the fund organized?" (prospectus for T. Rowe Price Retirement 2030 Fund, a mutual fund available to non-instructional investors) *with* the Plan's "T. Rowe Price Retirement 2030 Trust A"; *see also* Collective Investment Trusts (https://www.troweprice.com/financial-intermediary/us/en/investments/collective-investment-trusts.html) (explaining CIT's "[i]nstitutional-only availability").

that merely alleging that a plan offered retail rather than institutional share classes is insufficient to carry a claim for fiduciary breach."); *Marks*, 2020 WL 2504333, at \*7-8. As these courts have recognized, there are sound reasons to incur the modest incremental difference in expense ratios because the additional revenue is used to pay for services that would otherwise be paid directly by participants, and these reasons are incompatible with an inference of imprudence. *Divane*, 2018 WL 238118, at \*3 (observing that retail share classes are used to cover recordkeeping costs).

### B.  Plaintiff's "Duty of Loyalty" Claim Lacks Any Requisite Facts (Count I)

The Court should also dismiss Count I to the extent it is premised on a purported breach of ERISA's duty of loyalty. It is well established that ERISA's duty of loyalty is separate and distinct from the duty of prudence, and allegations related to the latter cannot be repackaged and repleaded under the guise of the former. *See Martin*, 2020 WL 3578022, at \*6 (collecting cases). To state a plausible breach of the duty of loyalty, a plaintiff must set forth separate and distinct allegations of actual self-dealing or disloyal conduct. *See*, *e.g.*, *Loomis*, 658 F.3d at 671 (dismissing duty of loyalty claim where complaint failed to allege facts sufficient to support showing that defendant selected investments "to enrich itself at participants' expense"); *Martin*, 2020 WL 3578022, at \*6 (same); *Daugherty v. Univ. of Chicago*, 2017 WL 4227942, at \*9 (N.D. Ill. Sept. 22, 2017) (same). Plaintiff's complaint is devoid of any allegation that Defendants engaged in self-dealing or conduct that was intended to benefit anyone other than the Plan's beneficiaries. Because Plaintiff's duty of loyalty claim merely piggybacks on her allegations of imprudence, it should be dismissed. *See Sacerdote v. New York Univ.*, 2017 WL 3701482, at \*5 (S.D.N.Y. Aug. 25, 2017) ("[A] plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts.").

## C. Plaintiff's Conclusory, Derivative Duty to Monitor Claim Should be Dismissed (Count II)

Plaintiff has also failed to plead a viable claim that Defendants breached their duty to monitor. As a threshold matter, it is settled law that a duty to monitor claim is derivative of a fiduciary breach claim. Without an underlying breach by the agent or appointee subject to monitoring, there can be no failure to monitor. *Howell v. Motorola, Inc.*, 633 F.3d 552, 572-73 (7th Cir. 2011); *Martin*, 2020 WL 3578022, at *6. Because Plaintiff has failed to plausibly allege any actionable breach of fiduciary duty, *see supra,* her duty to monitor claim also fails.

Even assuming Plaintiff could plead an actionable breach of fiduciary duty—she cannot— her failure to monitor claim should still be dismissed. As the Seventh Circuit has explained, a plan fiduciary does not violate its duty to monitor simply because it failed to prevent an alleged breach of fiduciary duty. *Howell*, 633 F.3d at 573 (explaining that the duty to monitor does not "require every appointing Board member to review all business decisions of Plan administrators"). Rather, a monitoring fiduciary must simply exercise the appropriate degree of oversight warranted under the circumstances. *Id.* Thus, to state a plausible monitoring claim, a plaintiff must identify a specific defect in the monitoring process and show that the defect resulted in harm. Vague allegations "only in the most general terms that the [defendants] breached their duty to monitor" fail to state a claim. *Neil v. Zell*, 677 F. Supp. 2d 1010, 1024 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010).

Plaintiff fails to plead any facts plausibly suggesting a deficient monitoring process or a resulting harm. Plaintiff simply alleges that "Defendants" (apparently, Prevea Clinic, the Prevea Directors, and unidentified "John Does") had the authority to appoint and remove members of the Committee and a duty to monitor their performance. Compl. ¶ 133-34. She then alleges in conclusory fashion—and without proffering any well-pleaded facts—that Defendants "[f]ail[ed]

to monitor and evaluate the performance of the individuals responsible for Plan administration or have a system in place for doing so" and "[f]ail[ed] to monitor the process by which Plan investments were evaluated." *Id*. at ¶ 136. Such allegations, which simply recite the basic elements of a duty to monitor claim, fail to satisfy *Twombly* and *Iqbal*.

### D. The Complaint's Conclusory, Circular Prohibited Transaction Claim Should be Dismissed (Count III)

Finally, Plaintiff claims that Defendants engaged in prohibited transactions under ERISA § 406(a), which prohibits transactions between a plan and a "party-in-interest." Compl. ¶¶ 139-144. As a preliminary but dispositive matter, Plaintiff does not allege that Defendants made any payments to the alleged party-in-interest during her tenure as a Plan participant. *See* Comp. ¶ 94 (alleging prohibited transactions occurred in 2014-2018, *i.e.*, years before Plaintiff started participating in the Plan). For that reason alone, her prohibited transaction claim must be dismissed because she lacks standing to assert it. *See supra*, at 5-8.

Moreover, "to plausibly allege the basic elements" of a prohibited transaction claim, a plaintiff must allege "that any defendant benefited from the collected fees, that the fees were assets of the plans, or that any defendant knew or should have known that collecting routine fees may violate ERISA." *Divane*, 953 F.3d at 992. Plaintiff's prohibited transaction claim rests on nothing more than the mere fact that the Plan paid two of its investment advisors, Baird and Harbor, to provide investment advisory services. Compl. ¶¶ 140-141. There is no allegation that any defendant benefited from these collected fees or that a defendant should have known that such routine fees to a plan's investment advisors may violate ERISA (it does not).

In any event, courts have rejected Plaintiff's self-serving view of prohibited-transaction liability time-and-again because it is premised on "circular reasoning"—*i.e.*, that "transactions were prohibited because [the service provider] was a party in interest, and [the service provider]

738108682.10 1-Oct-20 14:31

was a party in interest because it engaged in the prohibited transactions." *Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 34 (D.D.C. 2018). These types of transactions—*i.e.*, paying ordinary investment advisors for services negotiated at arm's length—are not the sort of deals "struck with plan insiders" that ERISA aims to prohibit. *Id.* at 36 (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996)). As the Third Circuit has explained, to hold otherwise would be "absurd" because it "would expose fiduciaries to liability for every transaction whereby services are rendered to the plan." *Sweda v. Univ. of Penn.*, 923 F.3d 320, 337 (3d Cir. 2019); *see also Ramos v. Banner Health*, 2020 WL 2553705, at *54 (D. Colo. May 20, 2020); *Marshall v. Northrop Grumman Corp.*, 2019 WL 4058583, at *12 (C.D. Cal. Aug. 14, 2019); *Sacerdote*, 2017 WL 3701482 at *13. Because Plaintiff's prohibited transaction claim is nothing more than an attack on the routine and necessary plan-service provider relationship, she fails to state a plausible prohibited transaction claim.

## CONCLUSION

For the above reasons, Defendants' motion to dismiss should be granted.

Dated: October 2, 2020                    Respectfully submitted,

                                          */s/ Nancy G. Ross*
                                          Nancy G. Ross
                                          Richard E. Nowak
                                          Samuel D. Block
                                          Mayer Brown LLP
                                          71 South Wacker Drive
                                          Chicago, Illinois 60606
                                          (312) 782-0600
                                          nross@mayerbrown.com
                                          rnowak@mayerbrown.com
                                          sblock@mayerbrown.com

                                          Brian D. Netter
                                          Mayer Brown LLP
                                          1999 K St NW
                                          Washington, DC 20006
                                          (202) 263-3339
                                          bnetter@mayerbrown.com

                                          *Attorneys for Defendant*