UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ALISON J. NOHARA and
PATTI J. SZYDEL,

        Plaintiffs,

        v.                                                                           Case No. 20-C-1079

PREVEA CLINIC INC., et al.,

        Defendants.

---

## DECISION AND ORDER

---

      Plaintiffs Alison J. Nohara and Patti J. Szydel, participants in the Prevea Clinic, Inc., 401(k) and Retirement Plan (the Plan), bring this case as a proposed class action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(2), against Defendants Prevea Clinic Inc. and the Board of Directors of Prevea Clinic Inc. Defendants filed a motion to dismiss the amended complaint on November 20, 2020, and Plaintiff Nohara filed a motion for leave to amend the complaint on March 10, 2021. On September 30, 2021, the Court stayed and administratively closed the case pending the United States Supreme Court's decision in *Hughes v. Northwestern University*, No. 19-1401. The Supreme Court issued a decision in *Hughes* on January 24, 2022. 142 S. Ct. 737 (2022). That same day, the Court lifted the stay and invited the parties to submit simultaneous supplemental briefing in light of the Supreme Court's decision. The parties submitted supplemental briefs on February 7, 2022. On May 12, 2022, the Court granted the motion for leave to file a second amended complaint. Defendants filed a motion to dismiss the second amended complaint on June 16, 2022. The motion to dismiss is now ready for decision. For the reasons explained below, the motion to dismiss will be partially granted.

## LEGAL STANDARD

A motion to dismiss "tests the sufficiency of the complaint" to state a claim upon which relief can be granted. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012); *see also* Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, it must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* Instead, a claim must be plausible to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

## ALLEGATIONS CONTAINED IN THE AMENDED COMPLAINT

In September 2018, Plaintiff Nohara was hired as a neuro-interventional radiologist by Prevea Clinic to work at HSHS St. Vincent Hospital in Green Bay. 2d Am. Compl. ¶¶ 12–13, Dkt. No. 54. Plaintiff Szydel was hired by Prevea in August 2002 and worked as an employee health nurse until her employment with Prevea Clinic was terminated on March 1, 2020. *Id.* ¶¶ 5–16. Prevea Clinic is the plan sponsor and plan administrator of the Prevea Clinic, Inc. 401(k) and Retirement Plan (the Plan). *Id.* ¶ 25. Prevea Clinic acted through its officers, including the Board

2

Case 2:20-cv-01079-WCG   Filed 08/23/22   Page 2 of 13   Document 62

of Director defendants, and their members to perform plan-related fiduciary functions in the course and scope of their business. *Id.* ¶ 24. The Plan is a "defined contribution" pension plan under 29 U.S.C. § 1102(2)(A). *Id.* ¶ 29. A defined contribution plan allows employees to make pre-tax elective deferrals through payroll deductions to an individual account under a plan. *Id.* ¶ 36. The Plan has about $281,000,000 in assets and over 2,100 participants. *Id.* ¶¶ 30–31.

Plaintiffs allege that, at all relevant times, the Plan's fees were excessive when compared with other comparable 401(k) plans offered by other sponsors that had similar numbers of plan participants and similar amounts of money under management. *Id.* ¶ 68. They claim that, during the putative Class Period, which is defined as July 20, 2014, through the date of judgment, Defendants breached their fiduciary duties owed to the Plan, to Plaintiffs, and to other plan participants by (1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost; (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs and/or better performance histories; and (3) failing to monitor the recordkeeping and administration fees paid by the Plan to ensure that they were reasonable and, as a result, authorizing the Plan to pay objectively unreasonable and excessive recordkeeping and administration fees relative to the recordkeeping and administration services received. *Id.* ¶ 69. Defendants' recordkeeper during the Class Period was Transamerica Retirement Solutions, LLC, a "well-known provider" of recordkeeping and administration services. *Id.* ¶ 83.

Plaintiffs allege that Defendants failed to regularly monitor the Plan's recordkeeping and administration fees paid to covered service providers, including Transamerica, failed to regularly solicit quotes and/or competitive bids from covered service providers in order to avoid paying unreasonable fees for the recordkeeping and administration services, and failed to ensure that the

3

Plan paid no more than a competitive reasonable fee for recordkeeping and administration services. *Id.* ¶¶ 95–98. Plaintiffs assert that, from the years 2014 through 2018, the Plan had, on average, 1,945 participants and paid an average effective annual recordkeeping and administration fee of at least approximately $318,411, which equates to an average of at least approximately $164 per participant. *Id.* ¶ 105. They claim that, for the same time period, the annual recordkeeping and administration fees paid by other plans of similar sizes with similar amounts of money under management ranged from $41 to $73. *Id.* ¶ 108. Based on this information, Plaintiffs assert that a prudent plan fiduciary for the Plan would have on average an effective annual recordkeeping and administration fee of around $53 per participant. *Id.* ¶ 111. Plaintiffs allege that, because Defendants did not act in the best interests of the Plan, the Plan cost its participants a total minimum amount of approximately $1,076,525 in unreasonable and excessive recordkeeping and administration fees. *Id.* ¶ 115.

In addition, Plaintiffs allege that Defendants did not engage in an objectively reasonable process when selecting funds for the Plan. Plaintiffs claim that Defendants chose an investment option that effectively charges a fee that is almost 11% higher than an alternative investment option that provides the identical services of the same portfolio manager. *Id.* ¶ 143. They allege that, had Defendants acted in the best interests of the Plan's participants, Defendants would have selected funds with lower "net investment expense to retirement plans" than those funds actually selected by Defendants. *Id.* ¶ 172. Plaintiffs claim that, during the Class Period, they had no knowledge of Defendants' process for selecting and regularly monitoring investments to ensure that the investments remained prudent selections, the recordkeeping and administration fee structure, or the revenue sharing rates associated with the investments selected by Defendants. *Id.* ¶¶ 189–90. They allege that, had Defendants chosen other investment options, the Plan's participants would

4

have received virtually identical portfolio management services at a lower cost. *Id.* ¶ 192. Plaintiffs claim that both the expense ratios and the "net investment expense to retirement plans" of the Plan's investment options between the years 2014 to 2020 were more expensive by significant multiples of comparable passively managed and actively managed alternative funds in the same investment style. *Id.* ¶ 194. They assert that, because Defendants failed to act in the best interests of the Plan's participants by engaging in an objectively reasonable investigation process when selecting its investments, Defendants caused objectively unreasonable and unnecessary losses to Plaintiff and the Plan's participants in the amount of approximately $3,041,829 through 2018. *Id.* ¶ 197.

Plaintiffs also claim that Defendants failed to fully disclose fees charged to the Plan investments in the participants' quarterly statements and participant fee disclosure documents. *Id.* ¶ 203. They allege that Defendants failed to disclose to plan participants the revenue sharing rates of each investment option Defendants made available to plan participants which represent a refund and had the effect of lowering the effective annual expense ratios of the investment funds for which a plan service credit applies. *Id.* ¶ 206. Plaintiffs assert that, as a result, plan participants were unable to determine the actual net investment expense paid by retirement plan participants for each of their investment options. *Id.* ¶ 208.

Plaintiffs assert four claims for relief: breaches of duties of loyalty and prudence regarding recordkeeping and administration fees (Count I); breaches of duty of loyalty and prudence regarding investment management fees (Count II); failure to adequately monitor other fiduciaries regarding recordkeeping and administration fees (Count III); and failure to adequately monitor other fiduciaries regarding investment management fees (Count IV).

ANALYSIS

A. Breach of Fiduciary Duty Claims

Plaintiffs allege Defendants breached their fiduciary duties by causing the Plan to pay excessive recordkeeping costs, failing to retain the least costly share class of each fund, retaining high-cost funds, and failing to disclose revenue-sharing information to participants. A fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). To state a claim for breach of fiduciary duty under ERISA, "the plaintiff must plead '(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)). "In order to assess the prudence of the fiduciary's actions, they must be evaluated in terms of both procedural regularity and substantive reasonableness." *Id.* (citing *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 680 (7th Cir. 2014)).

A motion to dismiss, in the ERISA context, is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (noting that "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests about its methods and knowledge at the relevant times"). ERISA "represents a careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Fifth Third Bancorp*,

573 U.S. at 424 (internal quotation marks and citations omitted). "Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kinds of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). The Supreme Court has recognized that Congress wanted to avoid creating "a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefits plans in the first place." *Varity Corp v. Howe*, 516 U.S. 489, 497 (1996). But because ERISA plaintiffs generally do not have "inside information" regarding the fiduciary's process, the Seventh Circuit has recognized that "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Allen*, 835 F.3d at 678 (citation omitted).

The Supreme Court recently discussed the fiduciary's duty of prudence in *Hughes v. Northwestern University*, 142 S. Ct. 737 (2022). There, the plaintiffs alleged that the defendants violated their duty of prudence by offering needlessly expensive investment options and failing to solicit quotes or competitive bids for recordkeeping services. The Seventh Circuit held that the plaintiffs failed to state a claim because the plan offered a mix of low-cost index funds, including the types of funds the plaintiffs wanted. Because the plaintiffs' preferred type of investments were available, the court reasoned, the plaintiffs could not complain about the flaws in the other options. The Seventh Circuit also found that the amount of recordkeeping fees paid were within the participants' control, since "'plan participants had options to keep the expense ratios (and, therefore, recordkeeping expenses) low.'" *Id.* at 742 (quoting *Divane v. Northwestern Univ.*, 953 F.3d 980, 991 (7th Cir. 2020)).

The Supreme Court rejected the argument that the availability of plan options eliminated any concern that certain plan options were imprudent. The Court explained that the Seventh

Circuit's holding "is inconsistent with the context-specific inquiry that ERISA requires and fails to take into account respondents' duty to monitor all plan investments and remove any imprudent ones." *Id.* at 740 (citing *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015)). The Court remanded the case so that the lower court could "reevaluate the allegations as a whole" by considering whether the plaintiffs "have plausibly alleged a violation of the duty of prudence as articulated in *Tibble*, applying the pleading standard discussed in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)." *Id.* at 742. The Court noted that "[b]ecause the content of the duty of prudence turns on the circumstances prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Id.* (internal quotation marks, citations, and alterations omitted). With these considerations in mind, the Court now turns to Plaintiffs' allegations.

1. **Recordkeeping Fees**

Plaintiffs assert that Defendants breached their fiduciary duty by causing the Plan to pay excessive recordkeeping fees. They allege that Defendants did not follow a prudent process because they did not solicit quotes or competitive bids on a regular basis to ensure that plan administrative expenses were reasonable. 2d Am. Compl. ¶¶ 103–04. Plaintiffs allege that, from 2014 to 2018, the Plan had on average 1,945 participants and paid an average effective annual recordkeeping and administration fee of at least $318,411, which equates to an average of approximately $164 per participant. *Id.* ¶ 105. They maintain that, during the same time period, the annual recordkeeping and administration fees paid by other similarly sized plans with similar amounts of money under management ranged from $41 to $73. *Id.* ¶¶ 108–09. Plaintiffs allege, based on this information, that a prudent plan fiduciary would have paid on average an effective annual recordkeeping and administration fee of approximately $53 per participant. *Id.* ¶ 113.

Plaintiffs assert that the "market for defined contribution recordkeeping services is highly competitive," particularly for a plan like Defendants', which has more participants and assets than 99% of the defined contribution plans in the United States that filed 5500 forms. *Id.* ¶¶ 31, 44. Plaintiffs claim that, because Defendants did not regularly solicit competitive bids to ensure that the fees paid were reasonable, despite the Plan's size and the alleged ease of which to do so, the Plan cost its participants a total minimum amount of $1,076,525 in unreasonable and excessive recordkeeping and administration fees. *Id.* ¶ 115.

Defendants assert that Plaintiffs' allegations do not plausibly state a claim because they do not provide a factual basis to determine whether Defendants used an imprudent process for reviewing and monitoring the Plan's recordkeeping arrangement with Transamerica. They argue that Plaintiffs' fee estimates are completely unfounded, and that Plaintiffs failed to present actual comparators. Plaintiffs allege that Defendants' process is imprudent because Defendants should have leveraged the Plan's size to solicit quotes and competitive bids for lower recordkeeping fees. To support their allegations, Plaintiffs cited examples of the fees other allegedly comparable plans paid and identified less expensive, alternative recordkeepers that would have accepted a lower recordkeeper and administration fee than was paid to Transamerica to perform the same level of services. *See id.* ¶¶ 40, 105, 118, 120. While "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise," *Hughes*, 142 S. Ct. at 742, at this stage, the second amended complaint plausibly alleges that Defendants' failure to solicit bids and negotiate for reasonable fees was imprudent.

2. **High-Cost Funds**

Plaintiffs allege that Defendants breached their fiduciary duty by retaining high-cost actively managed investments. 2d Am. Compl. ¶ 194. Defendants assert that the mere presence

9

of actively managed funds in a diversified lineup is insufficient to state a claim and that Plaintiffs' claim is implausible because the second amended complaint does not contain any allegations suggesting that the alternatives are "meaningful benchmarks." Defs.' Br. at 21, 23, Dkt. No. 58. Plaintiffs do not generally oppose actively managed funds; instead, they maintain that, although actively managed funds can be part of the mix of investments of a plan if a prudent process has been followed in selecting them, Defendants breached their fiduciary duty by failing to make a specific and informed finding regarding the cost of the investment options in the Plan. They allege that the investment options selected by the plan fiduciaries were 408% more expensive than prudent alternative and less expensive options covering the same asset category. 2d Am. Compl. ¶ 179. Though Plaintiffs have provided comparative tables to suggest that Defendants engaged in an imprudent process when selecting those investments, Plaintiffs are not suggesting that the difference in the cost alone creates a cause of action. The difference in cost, however, does raise an inference that Defendants engaged in an imprudent process when selecting those investments by failing to consider materially similar and less expensive alternatives. *Id.* ¶¶ 176, 194. Therefore, Plaintiffs have stated a claim that Defendants breached their fiduciary duty by retaining high-cost actively managed investments.

### 3. Share Class

Plaintiffs allege that Defendants breached their fiduciary duty of prudence by failing to retain low-cost share classes of four mutual funds for the Plan when such share classes were offered to other investors. *Id.* ¶¶ 133–200. Plaintiffs' claim of imprudence is based on the novel "net investment expense to retirement plans" theory of liability. Plaintiffs allege that a prudent plan fiduciary must ensure that "the Plan selects the share class that provides the greatest benefit to plan participants given the institutional advantages provided to retirement plans in relation to retail

10

investors." *Id.* ¶ 135. The "net investment expense to retirement plans," Plaintiffs explain, is the "share class that gives plan participants access to the portfolio managers at the lowest net fee for the services of the portfolio manager." *Id.* Even though the Seventh Circuit has not addressed imprudence based on a net investment expense to retirement plans theory, the crux of Plaintiffs' argument is that Defendants should have selected share classes that would have cost participants less. Plaintiffs maintain that the lowest net fee is always the prudent choice and that Defendants could have selected share classes that would have cost participants less if they had utilized a prudent process for doing so.

Defendants assert that Plaintiffs' criticism of the share classes of certain investments fails to plausibly establish imprudence. They argue that fiduciaries are not required to select the least expensive investment, share class or otherwise, and that cost is just one factor among many that prudent fiduciaries must consider when selecting investments. While ERISA does not require a fiduciary to offer the cheapest possible fund, *see Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009), ERISA fiduciaries have a duty to evaluate costs and expenses when selecting investments as well as a continuing duty to monitor investments and remove imprudent ones. *Tibble*, 575 U.S. at 530. Plaintiffs contend that there is no difference between the share classes other than cost. They assert that there is "no rational reason for a prudent Plan Fiduciary to choose an investment option that effectively charges a fee that is almost 11% higher than an alternative investment option that provides the identical services of the same portfolio manager." 2d Am. Compl. ¶ 143. It is plausible to infer from Plaintiffs' allegations that Defendants breached the duty of prudence by failing to retain low-cost share classes of four mutual funds for the Plan.

11

### 4. Disclosure of Revenue-Sharing Arrangement

Plaintiffs allege that Defendants failed to properly disclose various fee components and other information related to the services provided by the recordkeepers. But the Seventh Circuit has recognized that fiduciaries are not required to disclose "information about the revenue-sharing arrangement." *Hecker*, 556 F.3d at 586. Indeed, all that matters is the total fee amount, not how those fees are allocated and distributed. *Id.* Although Plaintiffs suggest that citations to *Hecker* for disclosure purposes are outdated, Pl.'s Br. at 27 n.21, *Hecker* remains the law of this circuit which, of course, is binding on this Court. When given the chance to overrule *Hecker*, the Seventh Circuit declined. *See Loomis v. Exelon Corp.*, 658 F.3d 667, 670 (7th Cir. 2011) ("Plaintiffs do not persuade us to overrule *Hecker*."). In short, Defendants are not required to disclose fees charged or credited to the Plan investments with the level of detail sought by Plaintiffs.

### B. Remaining Claims

The second amended complaint asserts claims of breach of the duty of loyalty. In response to Defendants' motion to dismiss, Plaintiffs stated that they are no longer pursuing their duty of loyalty claims in Counts I and II. Therefore, Plaintiffs' breach of the duty of loyalty claims are dismissed.

Plaintiffs also allege that Defendants breached their duty to monitor. Plaintiffs' breach of the duty to monitor claim is derivative of the breach of fiduciary duty claim. Because Plaintiffs have stated claims for breach of fiduciary duty with respect to the recordkeeping fees and investment management fees, they have also stated a claim that Defendants breached their duty to monitor.

## C. Board of Director and Individual Director Defendants

Defendants assert that the Board of Director defendants and individual director defendants (denominated as John Does 1–10) should be dismissed. Plaintiffs agree that the individual director defendants should be dismissed from the case. Pls.' Br. at 25 n.17, Dkt. No. 59. As to the Board of Director Defendants, Defendants argue that Plaintiffs do not plausibly allege that the Board had fiduciary responsibility for the misconduct alleged. The second amended complaint alleges, however, that "Prevea Clinic acted through its officers, including the Board Defendants, and their members (John Does 1–10), to perform Plan-related fiduciary functions in the course and scope of their business." 2d Am. Compl. ¶ 24. Accepting Plaintiffs' allegation as true, as this Court is required to do at this stage, Plaintiffs have plausibly alleged that the Prevea Clinic Board of Directors are fiduciaries.

## CONCLUSION

For these reasons, Defendants' motion to dismiss (Dkt. No. 57) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The motion is granted with respect to Plaintiffs' breach of fiduciary duty claim regarding Defendants' failure to properly disclose revenue sharing information to participants and breach of the duty of loyalty claims, and those claims are dismissed. The individual director defendants are dismissed as defendants in this case. The motion is denied in all other respects. The Clerk is directed to set the matter on the Court's calendar for a Rule 16 telephonic scheduling conference.

**SO ORDERED** at Green Bay, Wisconsin this 23rd day of August, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge