UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ALISON J. NOHARA** and **PATTI J. SYZDEL,**
*individually, and as representatives of a class of participants and beneficiaries, on behalf of the Prevea Clinic, Inc. 401(k) and Retirement Plan,*

    **Plaintiffs,**

v.                                           Case No. 20-CV-1079-WCG-SCD

**PREVEA CLINIC INC.,**

**THE BOARD OF DIRECTORS OF PREVEA CLINIC, INC.,** and

**JOHN DOES 1-30,**

    **Defendants.**

---

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR RECONSIDERATION

---

      Plaintiffs Alison Nohara and Patti Syzdel brought a lawsuit against Prevea Clinic, Inc., its Board of Directors, and against the Directors as individuals (collectively, "Prevea") on July 16, 2020, on behalf of themselves and other participants in the Prevea Clinic, Inc. 401(k) and Retirement Plan alleging violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101–1461 (ERISA). This report and recommendation addresses the defendants' motion for partial reconsideration of the court's decision on the defendants' motion to dismiss Nohara and Syzdel's second amended complaint. In light of the Seventh Circuit's recent clarification of the law, I will recommend the court grant the motion for

reconsideration, dismiss the amended complaint in its entirety, and permit plaintiffs leave to file a third amended complaint.

## BACKGROUND

Nohara and Syzdel were employed by Prevea Clinic, Inc. and participated in the Prevea Clinic, Inc. 401(k) and Retirement Plan ("the Plan"). The details of the Plan are outlined in Judge Griebsach's initial order and will not be recounted here. *See* ECF No. 62 at 2-5. Although there have been several iterations of the complaint, Nohara and Syzdel's most recent second amended complaint, ECF No. 54, stated four ERISA claims: (1) that Prevea breached its duties of loyalty and prudence regarding high recordkeeping and administration fees; (2) that Prevea breached its duties of loyalty and prudence regarding high investment management fees; (3) that Prevea failed to adequately monitor other fiduciaries regarding recordkeeping and administration fees; and (4) that Prevea failed to adequately monitor other fiduciaries regarding investment management fees.

Nohara and Syzdel made three main arguments supporting their claims. First, they argue that Prevea violated its duty of prudence by selecting investments with inordinately high recordkeeping fees. Second, they argue that Prevea violated its duty of prudence by purchasing share classes for the Plan based on the upfront investment management fee and not on a proposed "net cost" model. Finally, Nohara and Syzdel argue that Prevea violated its duty of prudence by including in the Plan actively managed funds with higher investment management fees instead of lower-cost index funds. The arguments as outlined in the second amended complaint (SAC)[1] are further explained below.

I. **Recordkeeping Fees Claims**

---

[1] The second amended complaint is located at ECF No. 54.

Nohara and Syzdel alleged that the Plan's recordkeeping fees were excessive compared to plans with similar numbers of participants and similar amounts of money under management. They argued that a prudent Plan fiduciary must do three things regularly to ensure that recordkeeping fees remained reasonable: "pay close attention to the recordkeeping fees being paid"; "identify all fees, including direct compensation and revenue sharing being paid to the Plan's recordkeeper"; and "remain informed about overall trends in the marketplace regarding the fees being paid by other plans." SAC ¶¶ 85-87. Nohara and Syzdel allege that Prevea failed to do each of these things. SAC ¶¶ 95-97. By failing to do so, plaintiffs argued, Prevea breached its obligation to ensure that Plan participants paid no more than competitive and reasonable recordkeeping and administration fees. SAC ¶ 99. Plaintiffs claimed that the $164 that participants paid on a per-person per-year basis was unreasonable compared to the fees charged by comparable plans, which plaintiffs believed to be $53 annually on average. SAC ¶¶ 105, 108. According to plaintiffs, these imprudent decisions resulted in approximately $1,076,525 in unreasonable recordkeeping fees. SAC ¶ 115.

II.     **Investment Management Fees**

Nohara and Syzdel made two separate arguments that Prevea's investment portfolio contained unreasonable investment management fees. First, they argued that Prevea was obligated to purchase fees with the "lowest net cost" (the "share class theory"). According to plaintiffs, "choosing the share class that provides the lowest Net Investment Expense to Retirement Plans is always the prudent choice because, all else being equal, the use of the share class that provides the lowest Net Investment Expense to Retirement Plans will result in one of the following superior options: 1) The amount of the fee extraction to cover the [recordkeeping] fee will be lower; or 2) the amount of excess revenue being credited back to

Participant accounts is greater." SAC ¶ 136. In other words, Nohara and Syzdel believe that Prevea should have purchased share classes with a higher face-value because they were eligible for certain rebates via revenue sharing that would have lowered the net investment expense of the share classes. To support these allegations, Nohara and Syzdel provided a table comparing Prevea's selected share classes with what they consider to be better options. SAC ¶ 141. For example, they believe that Prevea should have chosen the fund "MFS Mid Cap Value R3" with a higher expense ratio than the fund they actually selected, "MFS Mid Cap Value R4." *Id*. Nohara and Syzdel claimed that when the revenue sharing "rebate" was deducted from the expense ratio in each fund, the net cost of the selected R4 class fee would be 0.68% compared to the lower net cost of 0.57% for the proposed R3 class. *Id*.

Finally, Nohara and Syzdel argued that the investment management fees were imprudent because the plan offered actively managed funds that cost more than their passively managed counterparts (the "high-cost investments theory"). According to the plaintiffs, "[i]f a Plan Fiduciary chooses an active investment option when an alternative index option is available, but the Plan Fiduciary does not make a specific informed finding that the probability that the active portfolio manager will outperform the index . . . the Plan Fiduciary has acted unreasonably and/or imprudently." SAC ¶ 132. Nohara and Syzdel believe that Prevea behaved imprudently in selecting many high-cost actively managed investments because "[w]hile higher-cost mutual funds may outperform a less-expensive option over the short term, such as a passively managed index fund, they rarely do so over the longer term." SAC ¶ 174. In support of this allegation, Nohara and Syzdel present a table lining up Prevea's investment choices with what they considers more prudent and less expensive investments. SAC ¶ 176.

### III. Procedural History

Prevea moved to dismiss the entire complaint under Rule 12(b)(6). ECF No. 57. On August 23, 2022, United States District Judge William Griesbach granted the motion in part with respect to the duty of loyalty claims and all claims against individual director defendants. Judge Griesbach denied the remainder of the motion, permitting all duty of prudence and duty to monitor claims to proceed.[2] ECF No. 62.

Shortly thereafter, the Seventh Circuit issued a decision regarding ERISA pleading standards. *See Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022). Prevea believes that decision compels a different outcome here, and it asks the court to reconsider its decision partially denying Prevea's motion to dismiss. ECF No. 67. Prevea asks the court to dismiss the case in its entirety and to deny plaintiffs any leave to amend their complaint. Judge Griesbach has referred the case to me under 28 U.S.C. §636(b)(1) to address this motion. *See* ECF No. 72.

## LEGAL STANDARD

District courts have broad discretion to revisit their interlocutory orders. *See Solis v. Current Dev. Corp.*, 557 F.3d 772, 780 (7th Cir. 2009) (citing *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571 (7th Cir. 2006)). "Under Federal Rule of Civil Procedure 54(b), 'any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *TL Constr. Mgmt., LLC v. City of Green Bay*, No. 19-C-1077, 2020

---

[2] Because plaintiffs concede that duties to monitor derive from duties of prudence (ECF No. 59 at 24), these claims will be discussed jointly, with claims one and three referred to as the "recordkeeping fee claims" and claims two and four referred to as the "investment management fee claims."

WL 7698374, 2020 U.S. Dist. LEXIS 242441, at *2 (E.D. Wis. Dec. 28, 2020) (quoting Fed. R. Civ. P. 54(b)). "A court has the power to revisit prior decisions of its own . . . in . . . circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *TL Constr. Mgmt*, 2020 U.S. Dist. LEXIS 242441, at *2 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).

Likewise, under the law of the case doctrine, a court may reconsider its prior ruling "if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *Birch Hill Real Estate, LLC v. Breslin*, No. 19-C-426, 2019 WL 4278505, 2019 U.S. Dist. LEXIS 154019, at *5 (E.D. Wis. Sept. 10, 2019) (quoting *Santamarina*, 466 F.3d at 571–72). In other words, the law of the case doctrine does not preclude reconsideration if the court "is convinced that [its prior decision] is clearly erroneous and would work a manifest injustice." *Birch Hill Real Estate*, 2019 U.S. Dist. LEXIS 154019, at *5 (quoting *Agostini v. Felton*, 521 U.S. 203, 236 (1997)). "Not to reconsider in such circumstances would condemn the parties to the unedifying prospect of continued litigation when they knew that a possibly critical ruling was in error and, unless it became moot in the course of the proceedings, would compel a reversal of the final judgment at the end of the case." *Birch Hill Real Estate*, 2019 U.S. Dist. LEXIS 154019, at *5 (quoting *Santamarina*, 466 F.3d at 572).

## DISCUSSION

### I. High Recordkeeping Fees Claim

In *Albert*, the Seventh Circuit affirmed the district court's dismissal of a plaintiff's claim that the recordkeeping fee in a retirement plan was imprudent. *See Albert*, 47 F.4th 570. The plaintiff in *Albert* argued, like plaintiffs here have argued, that the retirement plan's fiduciary

breached its duty of prudence by failing to solicit quotes and competitive bids from other plans with potentially lower recordkeeping fees. *Id.* at 579. The plaintiff in *Albert* attempted to demonstrate that the plan's recordkeeping fees were unreasonably high by comparing the fees that participants in the defendant's retirement plan paid compared to participants in nine other plans. *Id.* The district court dismissed this claim, and the Seventh Circuit affirmed. The Seventh Circuit ruled that a failure to regularly solicit bids from different recordkeepers was not a breach of any fiduciary duty. *Id.* The court also determined that high costs alone did not prove anything; in order to show that the recordkeeping fees were imprudent, a plaintiff would need to allege not merely that the fees were high, but that they "were excessive relative to the services rendered." *Id* at 580 (quoting *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022)).

Prevea argues that *Albert* forecloses any argument that a failure to solicit quotes from alternative recordkeepers constitutes a breach of prudence and that like the complaint in *Albert*, the second amended complaint here "exhibits the same failure to address the services at issue."[3] ECF No. 68 at 7. In making these arguments, Prevea does not question whether high recordkeeping fees *could* be a breach of the duty of prudence; rather, Prevea argues that Nohara and Syzdel have not provided the factual allegations that would make such a claim plausible rather than merely possible. *See Albert*, 47 F.4th at 580 ("[W]e emphasize that recordkeeping claims in a future case could survive the context-sensitive scrutiny of a complaint's allegations courts perform on a motion to dismiss. [The plaintiff]'s complaint

---

[3] Prevea also argues that the second amended complaint selected inappropriate comparators and used unreliable methods of calculating annual recordkeeping fees. *Albert* did not address the sufficiency of the calculations or the comparators for recordkeeping fees. As such, *Albert* does not provide new grounds on which to consider these arguments, so they will not be addressed at this time.

simply does not provide the kind of context that could move this claim from possibility to plausibility under Twombly and Iqbal.") (internal citations omitted).

I find that the factual allegations in Nohara and Syzdel's second amended complaint are insufficient to make their claims plausible. The allegations in the plaintiffs' second amended complaint are nearly identical to the complaint in *Albert*. In fact, the factual allegations related to the recordkeeping claims *are* identical but for the specific names of recordkeepers, the numbers pertinent to each plan, and the occasional insertion of the phrase "unlike a hypothetical prudent fiduciary" in the Prevea complaint. *Compare* SAC ¶¶ 93-121, *with Albert* Complaint, ECF 68-1, ¶¶ 88-114. (The complaints were drafted by the same lawyer in both cases.) *Albert* makes it clear that for an investment to be considered imprudent based on high recordkeeping costs, a plaintiff must be able to articulate why a recordkeeper's fees are excessive relative to the services rendered. Nohara and Syzdel's recordkeeping fee claim is based entirely on the cost relative to the average cost of other plans and does not discuss the *services* covered by those fees, just like the complaint that the court dismissed in *Albert*. For these reasons, Nohara and Syzdel's recordkeeping fee claim should be dismissed under the precedent in *Albert*.[4]

## II.     Investment Management Fee Claims – Share Class Theory

Nohara and Syzdel's share class theory fails as a matter of law post-*Albert*. Plaintiffs' counsel presented the same argument in *Albert* that he presented in this case: that the Plan's fiduciary should have purchased higher-cost share classes that would be eligible for rebates that would offset that higher cost to make the net expense lower. The Seventh Circuit rejected

---

[4] It's conceivable that recordkeeping services are essentially fungible, meaning that there aren't meaningful differences in services provided by various companies. If that's true, an allegation to that effect, supported by specific data, might suffice under *Albert*.

this argument because "there is not necessarily a one-to-one correlation such that revenue sharing always redounds to investors' benefit." *Albert*, 47 F.4th at 581. The court went on to state that "[w]hile a prudent fiduciary might consider such a metric, no court has said that ERISA *requires* a fiduciary to choose investment options on this basis." *Id*. (emphasis in original). Because *Albert* confirmed that a fiduciary need not purchase share classes based on the lowest net cost, there are no facts under which a claim for relief could be plausible. To the extent that investment management fee claims depend on the share class theory, they should be dismissed.

**III.     Investment Management Fee Claims: High-Cost Theory**

The Seventh Circuit in *Albert* also rejected an argument similar to Nohara and Syzdel's high-cost theory because the plaintiff had wrongly compared actively managed and passively managed funds to support his argument that the defendant imprudently selected high-cost investments. *Id*. "A complaint cannot simply make a bare allegation that costs are too high or returns are too low . . . Rather, it must provide a sound basis for comparison—a meaningful benchmark." *Id*. (quoting *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020)) (internal citations omitted). It is well established that a retirement plan can offer both actively and passively managed funds. *See e.g.*, *Smith*, 37 F.4th at 1165 ("We know of no case that says a plan fiduciary violates its duty of prudence by offering actively managed funds to its employees as opposed to offering only passively managed funds."). Funds with one investment strategy are not suitable benchmarks for reasonable costs of funds with a completely different investment strategy. *See, e.g.*, *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (finding that comparing a high-cost fund with a higher allocation of bonds with a better-performing, lower-cost fund "does not establish anything about whether the

[higher-cost fund] [was] and imprudent choice at the outset"). Different shares of the same fund could be a meaningful benchmark, but it is not enough to allege that "cheaper alternative investments with *some* similarities exist in the market." *Id*. at 824 (emphasis in original).

In support of their argument that Prevea selected imprudent high-cost funds rather than nearly identical lower-cost funds, Nohara and Syzdel provided a table comparing options within the two categories; except, despite plaintiffs' allegations to the contrary, there is no reason to believe these options are nearly identical. The categories differ in that they are offered by different providers. SAC ¶ 176 (listing mostly Vanguard funds as prudent alternatives to the mostly T. Rowe Price funds that were offered). The categories also differ in that most of the allegedly imprudent investments offered are high-cost actively managed funds that plaintiffs compare to low-cost index funds alleged to be prudent alternatives. *Id*. There is no basis to believe that the proffered comparators have any meaningful similarities with the investment options in the Plan. Nohara and Syzdel compared funds with different investment strategies, and as such, did not provide a sound basis on which I might find that its recommended alternative funds are sound comparisons. For this reason, I recommend dismissing plaintiffs' investment management claims under the high-cost theory.

## IV. Leave to Amend

Because the plaintiffs have already amended their complaint twice, they may amend their pleading again "only with the opposing party's written consent or the court's leave," Fed. R. Civ. P. 15(a)(2). "Leave to file 'shall be given freely when justice so requires.'" *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) (quoting Fed. R. Civ. P. 15(a)). "Although leave to file a second amended complaint should be granted liberally, a district court may deny leave for several reasons including: 'undue delay, bad faith[,] or dilatory

motive[,] . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Dubicz*, 377 F.3d at 792 (quoting *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002)). "Delay, standing alone, may prove an insufficient ground to warrant denial of leave to amend the complaint; rather, the degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar filing." *Dubicz*, 377 F.3d at 792 (quoting *Park*, 297 F.3d at 613).

Nohara and Syzdel should be permitted leave to file a third amended complaint. The plaintiffs have sufficiently demonstrated that justice requires allowing him to file another amended complaint. The plaintiffs seek leave to amend to respond to the *Albert* court's desire for further contextualization of their duty of prudence claims. The plaintiffs indicate that they are ready and able to file additional facts, noting that their lawyer has filed amendments in light of *Albert* in other, similar cases pending in this district. Based on the amended complaints in those cases, as well as Nohara and Syzdel's statements, it seems clear the proposed amendment would not include any new or additional claims. It is reasonable given those unique circumstances to allow Nohara and Syzdel to supplement their pleadings. Thus, while allowing Nohara and Syzdel to amend their pleadings again will delay this matter, I do not find that delay to be undue or that the delay will significantly prejudice the defendants.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that the court **GRANT** the defendants' motion for partial reconsideration, ECF No. 67; **GRANT** the defendants' motion to dismiss plaintiff's amended complaint in its entirety, ECF No. 57; and **GRANT** the plaintiff leave to file a third amended complaint.

Under 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72(b)(2), and E.D. Wis. Gen. L. R. 72(c), written objections to any recommendation herein, or part thereof, may be filed within fourteen days of service of this recommendation. The parties must file objections in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated in Milwaukee, Wisconsin, this 27th day of October, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge