UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ALISON J. NOHARA** and **PATTI J. SYZDEL**,
*individually, and as representatives of a class of participants and beneficiaries, on behalf of the Prevea Clinic, Inc. 401(k) and Retirement Plan,*

    **Plaintiffs,**

v.                                                  Case No. 20-CV-1079-WCG-SCD

**PREVEA CLINIC INC.,**

**THE BOARD OF DIRECTORS OF PREVEA CLINIC, INC.,**

    **Defendants.**

---

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**

---

Plaintiffs Alison Nohara and Patti Syzdel brought a lawsuit against Prevea Clinic, Inc. and its Board of Directors (collectively, "Prevea") alleging violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101–1461 (ERISA). Following several dismissals and subsequent amendments of the complaint, the plaintiffs' Third Amended Complaint brings two claims for relief. *See* ECF No. 76. First, plaintiffs allege that Prevea breached its duty of prudence by failing to ensure that its recordkeeper charged only reasonable recordkeeping and administrative fees. *Id.* at 31. Second, plaintiffs allege that Prevea failed to monitor those responsible for selecting a Plan recordkeeper, thereby permitting years of continued excessive and imprudent recordkeeping fees due to Prevea's continued unawareness of the unreasonableness of the fees. In other words, Prevea allegedly

chose the wrong recordkeeper in the first instance, and then failed to have the proper safeguards to realize this mistake and correct it. Prevea has moved to dismiss this action once again.

I. **Claim One: Duty of Prudence**

Nohara and Syzdel have alleged that Prevea violated its duty of prudence to Plan participants by allowing participants to pay excessive fees. TAC ¶ 6. Plans like the Prevea Plan hire "recordkeepers" to "deliver all the essential recordkeeping and related administrative ('RKA') services through standard bundled offerings." TAC ¶¶ 39, 40. The fees recordkeepers charge may vary based on several factors like profit margins and market pressures, but the complaint alleges that, "[i]n practice, there are no material difference [sic] between the services that are offered and provided by national recordkeepers." TAC ¶¶ 41, 50. Because RKA services are essentially interchangeable, the best way for a plan provider to discern whether an RKA fee is reasonable is to solicit competing quotes and compare them. TAC ¶¶ 51-54. And because these RKA services are essentially interchangeable, "'the cheaper . . . the better.'" TAC ¶ 58.

Plaintiffs have asserted that they and other participants paid more than average in RKA fees but received nothing "unusual or above and beyond the standard RKA services provided by all national recordkeepers to mega plans." TAC ¶¶ 66, 74. To demonstrate the unreasonableness of Prevea's RKA fees, plaintiffs have compared them to fees charged under other plans. Plaintiffs claim that from 2014 to 2022, Prevea Plan participants have paid an average of $165 in RKA fees annually. TAC ¶ 93. Plaintiffs argue that based on a collection of ten comparator plans, the average RKA fee should have been around $52 per year. TAC ¶

96. Plaintiffs assert that paying high RKA fees for standard services was unreasonable, and that by authorizing their payment, Prevea breached its duty of prudence. TAC ¶ 77.

   II.   **Claim Two: Duty to Monitor**

Plaintiffs further allege that Prevea breached its duty to monitor by failing to "engage in any regular and/or reasonable examination and competitive comparison of the Bundled RKA fees it paid." TAC ¶ 113. Had Prevea engaged in this examination and comparison shopping, it would have realized sooner that the RKA fees paid under the plan were excessive and changed recordkeepers or negotiated a better rate. TAC ¶ 115. The parties agree (as they have in the past) that the plaintiffs' duty to monitor claim stands and falls with the duty of prudence claim. *See* ECF Nos. 80 at 23-24, 82 at 28.

   III.  **Procedural History**

Part of the reason that this case has weathered so many dismissals and amendments is that the pleading standard for ERISA has evolved drastically since the case's initial filing in July 2020. At the time this case was filed, the Seventh Circuit imposed a high pleading standard on parties alleging ERISA violations by retirement plans. *Divane v. Northwestern University*, 953 F.3d 980 (7th Cir. 2020). The Supreme Court decided to review that standard, and it granted certiorari on *Divane*. Judge Griesbach stayed this current case in anticipation of the Court's decision regarding the ERISA pleading standard. ECF No. 43. In January 2022, The Supreme Court vacated the Seventh Circuit's decision in *Divane* and remanded it for the Seventh Circuit to reconsider. *Hughes v. Northwestern University*, 142 S. Ct. 737 (2022) (*Hughes I*). Relying on the reasoning in *Hughes I*, Judge Griesbach denied Prevea's motion to dismiss the plaintiffs' Second Amended Complaint with respect to the claims relevant here. ECF No. 62.

Then, in August 2022, before the Seventh Circuit panel hearing *Hughes* on remand could issue its decision, a different Seventh Circuit panel issued an opinion stating that *Hughes I* did not drastically change pleading standards for duty of prudence claims. *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022). This panel held that ERISA plaintiffs were still required to allege that recordkeeping fees were excessive *relative to the services rendered* and show more than that the fees were higher than average fees for other plans. *Id*. at 580. Based on this new precedent, Prevea moved for reconsideration, and Judge Griesbach referred the motion to me. ECF Nos. 67, 72. In October 2022, I recommended that Judge Griesbach grant the motion for reconsideration and dismiss the Second Amended Complaint with leave to amend based on *Albert*'s clarification of Seventh Circuit law. ECF No. 73. Judge Griesbach adopted my findings and dismissed the Complaint, and the plaintiffs filed a Third Amended Complaint in December 2022. ECF Nos. 75, 76. This most recent Complaint abandoned all claims except the claims for breaches of the duty of prudence and duty to monitor. ECF No. 76.

In January 2023, Prevea once again moved to dismiss, arguing that the Third Amended Complaint failed to correct the deficiencies which led to the dismissal of the Second Amended Complaint. ECF No. 79. Judge Griesbach referred this motion to me as well. ECF No. 81. The parties briefed the motion, and before I could issue my report and recommendation, the Seventh Circuit issued its decision in *Hughes II* in March 2022. *Hughes v. Northwestern University*, 63 F.4th 615, 620 (7th Cir. 2023) (*Hughes II*). The parties were given the opportunity to provide supplemental briefing addressing *Hughes II*'s impact on this case. ECF No. 90.

**LEGAL STANDARD**

## I. General Pleading Standard

An insufficient pleading may be dismissed for failing to state a claim. A "pleading must contain, among other things, 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the facts alleged "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. "To analyze the sufficiency of a complaint [a court] must construe it in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

## II. Pleading a Breach of Duty of Prudence

An ERISA fiduciary breaches the duty of prudence when it fails to "discharge his duties. . . with the care, skill, prudence, and diligence under the circumstances . . . that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). The duty of prudence requires fiduciaries to "incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship." *Hughes II*, 63 F.4th at 627. The duty of prudence also imposes a continuing duty to monitor investments. *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). Should the trustee learn that the plan contains "inappropriate" investments, "the trustee ordinarily has a duty to dispose of them within a reasonable time." *Hughes II*, 63 F. 4th at 627 (quoting SCOTT ON TRUSTS § 19.3.1).

As such, to plead a claim for the breach of the duty of prudence, "a plaintiff must plausibly allege fiduciary decisions outside a range of reasonableness." *Id*. at 630. Whether a fiduciary's decision was reasonable "will necessarily be context specific." *Hughes I*, 142 S. Ct. at 742 (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). A court may dismiss a claim which fails to provide "'the kind of context that could move [the] claim from possibility to plausibility' under *Twombly* and *Iqbal*." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 580 (7th Cir. 2022) (internal citations omitted). Where a fiduciary's actions could give rise to an inference of a breach of its duties, a court should also consider whether those actions have "'an obvious alternative explanation' that suggests an ERISA fiduciary's conduct falls within [a] range of reasonable judgments." *Hughes II*, 63 F.4th at 629 (quoting *Hughes I*, 142 S. Ct. at 742). However, this does not mean that a plaintiff "must conclusively rule out every possible alternative explanation" for a defendant's allegedly unreasonable actions; it is sufficient for her to simply overcome the "*obvious* alternative explanations . . . by a plausible showing that such alternative explanations may not account for the defendant's conduct." *Id*. (emphasis in original). "Accordingly, whether a claim survives dismissal necessarily depends on the strength or obviousness of the alternative explanation that the defendant provides." *Id*.

## DISCUSSION

I previously recommended dismissing the plaintiffs' Second Amended Complaint because it failed to discuss the services rendered by the recordkeeper—services which could, in theory, be of a higher quality that might justify a difference in cost between Prevea's RKA fees and the average fees paid in similar plans. In the TAC, plaintiffs have reframed their allegations to address this concern by alleging that there was no meaningful difference in services rendered by the recordkeeper for Prevea's plan and the recordkeepers for other plans.

Prevea nonetheless asserts that plaintiffs *still* have not done enough to demonstrate that Plan participants overpaid for the actual RKA services received. I disagree, and therefore recommend denying the defendants' motion to dismiss and allowing this case to proceed to discovery.

To reiterate, to survive this motion to dismiss, the plaintiffs must have (1) alleged that Prevea acted imprudently by permitting excessive RKA fees and (2) overcome any "obvious alternative explanations" under which Prevea's actions may have been prudent. *Hughes II*, 63 F.4th at 629. First, plaintiffs have pleaded that Prevea Plan participants paid significantly higher RKA fees—over three times higher—than would have been reasonable for a plan of Prevea's size. TAC ¶ 96. According to plaintiffs' data, Prevea's recordkeeper charged around $367,000 in annual RKA fees for a plan with approximately $320,000,000 in assets and 2,200 participants. TAC ¶ 95. In contrast, plans with more than double the assets and double the participants (which would presumably require more RKA services) paid annual RKA fees less than $300,000. TAC ¶ 95.

Prevea asks me to disregard this data because the plaintiffs have not proven that these comparator plans are sufficiently similar to the Prevea Plan to draw any inferences, and it further objects to the roughness of the plaintiffs' mathematical calculations. While I agree that the method used to arrive at these estimated per-participant fees is suspect—and would probably fail to carry the case at summary judgment—for now, the fact that plans twice Prevea's size paid significantly less than Prevea in total annual bundled RKA fees nudges plaintiffs' claim that Prevea Plan participants paid higher fees over the plausibility line. Prevea's argument regarding the sufficiency of the comparator plans is premature. At the pleading stage, plaintiffs should not be sent packing for not finding the perfect set of

comparators without any access to discovery tools. *See Mazza v. Pactiv Evergreen Servs. Inc.*, No. 22 C 5052, 2023 WL 3558156, at *4 (N.D. Ill. May 18, 2023) (noting that a defendant plan's challenges to the suitability of comparator plans "warrant[ed] exploration during discovery," but did not "require dismissal of Mazza's claim at the pleading stage.").

Having found that the TAC can support an inference that Prevea Plan participants paid higher RKA fees than the average retirement plan participants, I will now consider whether it can also support an inference that plaintiffs may not have received superior services that would justify the higher fees. Plaintiffs assure the court that that is not the case because the Plan's recordkeeper provides services on par with numerous recordkeepers charging significantly less. Plaintiffs have pleaded that most recordkeepers offer nearly identical bundled services to retirement plans like Prevea's and that "there are no material differences between the services offered" by these recordkeepers. TAC ¶¶ 39, 50. Plaintiffs have cited investment advice from several purported industry experts advising that RKA fees are commoditized and that the most important consideration in selecting a recordkeeper is price. TAC ¶¶ 58-61. As such, plaintiffs continue, "any minor variation" in the services offered by the Prevea Plan's recordkeeper cannot justify a drastic difference in Prevea Plan fees and fees charged in similar plans. TAC ¶ 74. Based on these allegations, plaintiffs have pleaded facts sufficient to support an inference that Prevea Plan participants did not receive RKA services justifying the high RKA fees that they paid. Taken together, plaintiffs' allegations of high fees and standard services support an inference that Prevea may have acted imprudently in selecting its recordkeeper.

Furthermore, plaintiffs have on this fourth attempt finally cleared the pleading bar by overcoming any "obvious alternative explanation" under which paying higher RKA fees may

be prudent. Under *Hughes II*, plaintiffs are not required to "conclusively rule out every possible alternative explanation for a defendant's conduct." *Hughes II*, 63 F.4th at 629. The plaintiffs do not even need to conclusively rule out "obvious alternative explanations;" it is sufficient for them to make a "*plausible* showing that such alternative explanations *may* not account for defendant's conduct." *Id.* (emphasis added). Here, the plaintiffs have done at least that. It seems equally reasonable to me that the defendants imprudently permitted excessive RKA fees as it does that the defendant prudently selected a recordkeeper providing superior services for higher fees. And where "alternative inferences are in equipoise—that is, where they are all reasonable based on the facts—the plaintiff is to prevail on a motion to dismiss." *Id.* (quoting *Forman v. TriHealth, Inc.*, 40 F.4th 443, 449 (6th Cir. 2022)).

Finally, denying this motion to dismiss would conform with an emerging pattern in the Seventh Circuit. Similar complaints around the circuit have survived motions to dismiss with nearly identical allegations. *See e.g.*, *Coyer v. Univar Sols. USA Inc.*, No. 1:22 CV 0362, 2022 WL 4534791, at *5 (N.D. Ill. Sept. 28, 2022) (denying a motion to dismiss a duty of prudence claim alleging RKA fees that "far exceeded the reasonable market rate" and standard RKA services); *Mazza*, 2023 WL 3558156 (denying a motion to dismiss a duty of prudence claim alleging that all recordkeepers provided the same services and that RKA fees paid under defendant's plan were higher than under comparable plans); *Lucero v. Credit Union Ret. Plan Ass'n*, No. 22-CV-208-JDP, 2023 WL 2424787 (W.D. Wis. Mar. 9, 2023) (denying a motion to dismiss a duty of prudence claim alleging there was no meaningful difference in the recordkeeping services offered by large plans and alleging that recordkeeping fees under defendant's plan were ten times higher than under similar plans); *Tolomeo v. R.R. Donnelley & Sons*, No. 20-CV-7158, 2023 WL 3455301, at *4 (N.D. Ill. May 15, 2023) (denying a motion

to dismiss a duty of prudence claim alleging "the fungible nature of [RKA] fees" and alleging that other providers could provide the same services for defendant plan at a lower cost).

For the reasons above, I find that plaintiffs have adequately pleaded a breach of the duty of prudence. Because the duty to monitor goes hand-in-hand with this claim, I find that they have also adequately pleaded a breach of the duty to monitor.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that the court **DENY** the defendants' motion to dismiss plaintiffs' amended complaint in its entirety.

Under 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72(b)(2), and E.D. Wis. Gen. L. R. 72(c), written objections to any recommendation herein, or part thereof, may be filed within fourteen days of service of this recommendation. The parties must file objections in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated in Milwaukee, Wisconsin, this 21st1st day of July, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge